# United States Court of Appeals
## For the First Circuit

No. 04-1488

TABUE SMILEY,

Petitioner, Appellant,

v.

MICHAEL T. MALONEY, Commissioner of the
Massachusetts Department of Corrections,

Respondent, Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, Jr., U.S. District Judge]

---

Before

Boudin, Chief Judge,
Torruella, Circuit Judge,
and Baldock,* Senior Circuit Judge.

---

John M. Thompson, with whom Thompson & Thompson, P.C. was on
brief, for petitioner-appellant.
Maura D. McLaughlin, Assistant Attorney General, Criminal
Bureau, with whom Thomas F. Reilly, Attorney General, were on
brief, for respondent-appellee.

---

September 2, 2005

---

* Of the Tenth Circuit, sitting by designation.

**TORRUELLA**, <u>Circuit Judge</u>. A Massachusetts Superior Court jury convicted Tabue Smiley of first-degree felony murder, illegal possession of a firearm, kidnaping, and armed assault in connection with a joint venture to rob a drug dealer which ended with one person dead and two others wounded. Smiley appeals the district court's denial of his habeas petition, challenging the first-degree murder conviction with claims of ineffective assistance of counsel in the pre-trial proceedings. Since the state court decision affirming his conviction was neither contrary to, nor an unreasonable application of, clearly established federal law, 28 U.S.C. § 2254(d)(1), we affirm.

**I**

On October 31, 1993, Smiley and four other individuals -- Dennis Hardy, Fred Shinholster, Calvashon Johnson, and Shandell Redd ("defendants") -- decided to rob Oliver Edwards of drugs and money.[1] They went to the apartment of Eric Williams, who sold drugs for Edwards, under the pretense of buying drugs so that Williams could page Edwards. Upon Edwards's arrival at Williams's

---

[1] These facts are taken from the Massachusetts Supreme Judicial Court's recitation of the facts, <u>Commonwealth</u> v. <u>Smiley</u>, 727 N.E.2d 1182, 1185 (Mass. 2000), which is entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1). <u>See</u>, <u>e.g.</u>, <u>Coombs</u> v. <u>Maine</u>, 202 F.3d 14, 18 (1st Cir. 2000); <u>cf.</u> <u>Sumner</u> v. <u>Mata</u>, 449 U.S. 539, 545-47 (1981) (presumption of correctness under former habeas statute applied to "factual determinations made by state courts, whether the court be a trial court or appellate court").

apartment, the defendants held both at gunpoint and forced them to go to Edwards's apartment.

When they arrived at Edwards's apartment, Hardy confined Williams in a closet and the defendants forced Edwards onto a living room couch, along with Edwards's girlfriend, June Johnson, who was present in the apartment when they arrived. Hardy and Shinholster then threatened Edwards and Johnson to disclose the location of drugs and money. Edwards eventually said that there was cocaine in the basement, after which Smiley and Redd went to search the basement.

Hardy took Edwards to the basement stairs and shot him, causing Edwards to fall down the stairs. Hardy returned to the living room and shot Johnson, despite Smiley's protestations. In the process, Hardy's pistol jammed, so Hardy took Smiley's pistol and went to the basement to shoot Edwards two more times. Hardy also shot Williams twice. Although Williams and Johnson survived, Edwards died from his wounds.

Before Hardy finished his shooting rampage, Smiley, Shinholster, and Johnson ran out of the apartment. They then met with Hardy and Redd at Rasheem Reid's house. At Hardy's request, Shinholster hid the semiautomatic gun in a cemetery behind Reid's house.

A few days later, Shinholster turned himself in and led the police to the cemetery where he hid the gun. Shinholster

eventually testified against Smiley. On November 3, 2003, Smiley's mother engaged the services of Attorney Elton Williams to facilitate Smiley's surrender. After consulting with Attorney Williams, Smiley gave a detailed statement to the police regarding the incident. Williams served as Smiley's counsel for approximately four more weeks, after which he was replaced by appointed counsel.

A Hampden County grand jury indicted Smiley for the murder of Edwards, illegal possession of a firearm, the kidnaping of Williams and Johnson, and armed assault in a dwelling. Prior to trial, Smiley moved to suppress his police statement on the basis of ineffective assistance by Attorney Williams. The trial judge denied the motion, finding that "Mr. Williams advised the defendant of the consequences of making a statement to the police; that there was advice given and understood; that the defendant could be convicted of first degree murder on the felony murder theory as well as on the joint venture theory." See Smiley, 727 N.E.2d at 1187 (citing trial judge's findings).

On August 21, 1994, the jury convicted Smiley of first-degree felony murder, indicating by special verdicts that both armed robbery and armed assault in a dwelling constituted the underlying felonies. The jury also convicted Smiley of the remaining charges. Smiley received a mandatory life term for the murder conviction and lesser concurrent sentences for the kidnaping

and illegal possession of a firearm convictions.  On November 28, 1997, Smiley filed a motion for a new trial, which the trial court denied after a non-evidentiary hearing.

On May 12, 2000, the Massachusetts Supreme Judicial Court (SJC) affirmed the convictions, finding, inter alia, that "defendant was not denied effective assistance of counsel." Smiley, 727 N.E.2d at 1182.  The SJC rejected Smiley's arguments that Attorney Williams failed to complete an adequate factual investigation, that he provided inadequate and misleading legal advice, and that he failed to pursue the opportunity of Smiley becoming a cooperating witness.  Id. at 1186-88.  In so finding, the SJC deferred to the trial judge's findings of facts, as it "accept[s] the motion judge's subsidiary findings of fact absent clear error."  Id. at 1186-87 (citing Commonwealth v. Yesilciman, 550 N.E.2d 378 (Mass. 1990)).

In 2001, Smiley petitioned for habeas relief under 28 U.S.C. § 2254, arguing, among other things, ineffective assistance of counsel that led to an unprotected confession.  In 2003, a magistrate judge recommended that the petition be dismissed, and in 2004, the district court agreed.  Smiley filed a timely notice of appeal, and the district court granted a certificate of appealability on September 9, 2004.  We review a district court's denial of habeas relief de novo.  See, e.g., Mello v. DiPaulo, 295

-5-

F.3d 137, 145 (1st Cir. 2002) (citing Nadeau v. Matesanz, 289 F.3d 13, 15 (1st Cir. 2002)).

## II

A criminal defendant claiming a Sixth Amendment ineffective assistance violation must establish that (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 694 (1984). See also Mello, 295 F.3d at 142. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

A habeas petitioner must further show, under the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996), that the state court's decision "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." Id. § 2254(d)(1). The "contrary to" prong is satisfied when the state court "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," Williams v. Taylor, 529 U.S. 362, 405 (2000), or if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a [different] result," id. at 406. The

"unreasonable application" prong is satisfied if the state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. Moreover, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

On previous occasions, we have noted that "[t]he Strickland principles for deciding ineffective assistance of counsel claims are 'clearly established' for purposes of the AEDPA." Ouber v. Guarino 293 F.3d 19, 26 (1st Cir. 2002) (citing Williams, 529 U.S. at 371-74). We have also noted that "'the standard for ineffective assistance under Massachusetts law appears functionally equivalent to the federal standard.'" Stephens v. Hall, 294 F.3d 210, 214-15 (1st Cir. 2002) (quoting Phoenix v. Matesanz, 189 F.3d 20, 27 n.4 (1st Cir. 1999).

In the instant case, Smiley argues that Attorney Williams rendered ineffective assistance by arranging an unprotected confession to first degree murder -- without conducting any independent fact investigation or adequate legal research -- in hopes of being offered cooperating witness status and a second degree murder plea, and then abandoned all negotiations with the

District Attorney after the confession. The confession, Smiley argues, prejudiced his defense because it was used against him in cross-examination, it helped form Shinholster's account and "devastating" testimony against him, and it was used in the prosecutor's closing argument.

We cannot conclude, however, that the SJC unreasonably applied the legal principles of Strickland to the facts of Smiley's case.[2] The SJC, in finding that counsel's performance was not deficient, deferred to the motion judge's finding that counsel advised Smiley not to make any statements to the police, that it was Smiley who wanted to cooperate with the prosecutor and had initiated the subject himself, and that counsel advised Smiley, before meeting with the police, that "he could be responsible for the homicide even though he never pulled the trigger himself." Smiley, 727 N.E.2d at 1187. Counsel also explained to Smiley that

---

[2] Although the SJC did not specifically refer to Strickland, it did refer to cases which cite the seminal Massachusetts case on ineffective assistance, Commonwealth v. Saferian, 315 N.E.2d 878 (Mass. 1974). Smiley, 727 N.E.2d at 1186-87 (citing Care & Protection of Stephen, 514 N.E.2d 1087 (Mass. 1987); Commonwealth v. Chetwynde, 574 N.E.2d 407 (Mass. 1991)). We have noted on several occasions that even if the SJC does not cite Strickland for the ineffective assistance of counsel standard, the Saferian standard is "functionally identical to the federal standard," Mello, 295 F.3d at 144 (citing Scarpa v. DuBois, 38 F.3d 1, 7 n.4; Ouber, 293 F.3d at 35), and is therefore sufficient for habeas ineffective assistance claims. In the instant case, we note that the SJC decision is not "contrary to" Strickland, as the SJC did not apply a rule that contradicts the Strickland principles, nor confronted a set of facts materially indistinguishable from the Strickland facts. Williams, 529 U.S. at 405-06.

a possible benefit of cooperation, while not guaranteed, could be a possible plea of second degree murder,[3] and counsel did not rush Smiley into making a statement. Moreover, contrary to Smiley's contention, the motion judge found that counsel did investigate the facts of the case by interviewing Smiley and other witnesses, by speaking with a co-defendant's attorney, and by reviewing written discovery materials. Thus, the SJC agreed with the motion judge's finding that "defendant did not receive any 'bad' or incorrect legal advice," id., and Smiley presents no "clear and convincing evidence" that their factual findings are otherwise incorrect. See 28 U.S.C. § 2254(e). Smiley does not cite to any Supreme Court precedent to support his contention, and we cannot find any reason at this juncture to hold, that an attorney's inability to secure a cooperating witness status or inability to continue negotiations with the district attorney after a confession constitutes a Sixth Amendment ineffective assistance violation. Thus, we find that the

---

[3] Smiley argues that his attorney misunderstood Massachusetts' homicide sentencing laws and misadvised him that he could plead to second degree murder and negotiate for a term of years sentence, rather than the mandated life sentence (with a possibility of parole after 15 years). Even assuming that this is true, the opportunity to plead to second degree murder was later offered to, and rejected by, Smiley. In any event, the motion judge had found that "Attorney Williams advised the defendant that he could be responsible for the homicide even though he never pulled the trigger himself . . . under the theory of joint venture or a theory of felony murder."

SJC's holding was not an unreasonable application of the first _Strickland_ prong.[4]

### III

Since we cannot say that the SJC's rejection of Smiley's ineffective assistance of counsel claim "was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d)(1), the district court's judgment is affirmed.

**Affirmed**.

---

[4] Even if we assume, however, that "counsel's representation fell below an objective standard of reasonableness," we fail to find prejudice resulting therefrom. _Strickland_, 466 U.S. at 694. As Smiley concedes, the Commonwealth never introduced his police statement during the trial, and to the extent that it was used to impeach his testimony, the trial judge specifically instructed the jury that prior inconsistent statements could not be used as substantive evidence. Under similar reasoning, we cannot conclude that the prosecutor's use of that statement during closing arguments would have substantially altered the outcome of the case. _Ouber_, 293 F.3d at 25-26. It was Smiley's trial counsel who first introduced that statement, and Smiley cites no precedent holding that such a statement used only for impeachment purposes is unconstitutional and warrants habeas relief. Smiley's remaining prejudice argument -- that his police statement was used by Shinholster in testifying against him -- also falters. The record is devoid of any suggestion that Shinholster used Smiley's statement to craft a different story at trial, and in any event, we find no Supreme Court precedent suggesting -- and we find no reason to now hold -- that such a statement shown to a prosecution witness warrants habeas relief. Because we find it difficult to accept that "but for counsel's unprofessional errors, the result of the proceeding would have been different," no _Strickland_ prejudice exists. _Strickland_, 466 U.S. at 694.