# United States Court of Appeals
## For the First Circuit

No. 05-2183

EDWARD H. LYNCH JR.,

Petitioner, Appellant,

v.

EDWARD FICCO, Superintendent of the Souza-Baranowski Correctional Center; THOMAS F. REILLY, Attorney General of the Commonwealth of Massachusetts,

Respondents, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before

Boudin, Chief Judge,
Cyr, Senior Circuit Judge,
and Lynch, Circuit Judge.

Emanuel Howard for appellant.
Eva M. Badway, Assistant Attorney General, Criminal Bureau, with whom Thomas F. Reilly, Attorney General, was on brief, for appellees.

February 15, 2006

**LYNCH**, **Circuit Judge**.    After a jury trial in the Massachusetts Superior Court, Edward H. Lynch Jr. was convicted of first-degree murder and sentenced to life in prison.  He appealed, and the Massachusetts Supreme Judicial Court (SJC) affirmed his conviction and affirmed the denial of various post-trial motions. See Commonwealth v. Lynch, 789 N.E.2d 1052, 1062 (Mass. 2003), cert. denied, 540 U.S. 1059 (2003).

Lynch filed a petition for a writ of habeas corpus in the federal district court.  The court denied the petition on all grounds.  Lynch then applied for a certificate of appealability (COA) as to the denial of the writ.  He sought and obtained the COA for only one of the grounds in his habeas petition -- a due process claim based on an argument that the state trial court's garbled jury instructions effectively relieved the prosecution of the burden of proving malice beyond a reasonable doubt.

We review the petition under the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254.  The respondents have two arguments.  The first is that, under the particulars of habeas law, Lynch cannot get to federal review of the merits of the constitutional jury instruction issue unless he shows cause for and prejudice from the independent and adequate state ground of procedural waiver based on his failure to object at trial to the instructions.  Lynch, in turn, attempts to show cause

and prejudice to excuse his procedural default by asserting ineffective assistance of trial counsel.

The respondents alternatively argue that if the merits are reached, then the standard of review is that the SJC's conclusions must be "contrary to" or an "unreasonable application" of federal constitutional law, and they are neither. Lynch replies that the SJC did not address the federal constitutional question, and that on de novo review, he is entitled to relief.[1] This latter dispute raises a question of the closeness of the match between the SJC's "center of gravity" test and federal constitutional tests for evaluating error in jury instructions. We never reach that issue.

We affirm the district court's denial of the habeas petition on the ground that Lynch has failed to show cause and prejudice to excuse his procedural default.

_____

[1] On the jury instruction issue, each party's brief applied the standard of review more favorable to the other side, and then each party changed its mind at oral argument. Thus, in his brief, Lynch suggested that the SJC had chosen not to review any federal constitutional issue, but he framed his argument on the merits of the jury instruction issue in terms of the AEDPA standard of review. At oral argument, however, he said that the SJC did not actually address the federal constitutional question, and that our review should be de novo. Meanwhile, respondents' brief states that "the SJC decided the jury instruction claim solely as a matter of state law. Thus, this court reviews the jury instruction claim de novo." However, at oral argument, respondents said the "center of gravity test" that the SJC applied to the jury instruction issue was a loose way of stating the federal test and was not in conflict with federal law, implicitly invoking AEDPA review.

-3-

**I.**

A.    <u>The Underlying State Crime</u>

The facts are described as they were found by the SJC, supplemented with other facts from the record that are consistent with the SJC's findings.  We must "accept the state court findings of fact unless [Lynch] convinces us, by clear and convincing evidence, that they are in error."  <u>McCambridge</u> v. <u>Hall</u>, 303 F.3d 24, 26 (1st Cir. 2002) (en banc) (citing 28 U.S.C. § 2254(e)(1)); <u>see</u> <u>also</u> <u>Smiley</u> v. <u>Maloney</u>, 422 F.3d 17, 19 n.1 (1st Cir. 2005).  Lynch recounts the facts somewhat differently to this court, but he does not argue that the SJC's description of what happened is in error.[2]

In June 1992, Lynch lived and worked on a hog farm in Lakeville, Massachusetts.  Early in the afternoon of June 5, he went to Taunton and began drinking.  Within several hours, he had consumed twelve to fourteen bottles of beer.  At around 7:00 p.m., he moved to another bar, where he drank more beer, leaving only once at around 9:30 p.m.; he bought a pint of vodka and returned with it within ten minutes.  When that bar closed at 1:00 a.m.,

---

[2] Lynch's version of the facts emphasizes his testimony that it was the victim who had attacked him, lunging with the knife and kneeing him in the groin, and that he had been trying to fend her off when he noticed she had been stabbed.  But he also acknowledges the prosecution's evidence that the victim sustained seven stab wounds and that Lynch confessed to stabbing the victim, and he agrees that the "evidence would have supported a finding of . . . malice."

Lynch remained "huddled in a doorway," continuing to drink from his bottle of vodka and napping. At 6:00 a.m., he had breakfast at a luncheonette, and then he returned to the second bar, where he resumed drinking. By 2:00 p.m., when he left the bar, Lynch had consumed approximately fourteen more alcoholic drinks.

Lynch left the bar in the company of Andrea Geremia, who had agreed to have sex with him for money. The two took a taxicab to Lynch's cottage on the grounds of the hog farm. Lynch had two beers, and Geremia had a soft drink. Lynch gave Geremia fifty dollars, and they went to the bedroom, where Lynch passed out before a sexual act was completed. Lynch awoke when he heard "the sound of a squeaky dresser drawer being opened." He concluded that Geremia, who was walking away from the drawer and who had her hand down her shirt, had stolen money from him. He became angry and followed Geremia to the kitchen. She turned on him, holding a ten-inch boning knife. Lynch "easily overpowered" her; he is six feet, two inches tall and then weighed 180 pounds, and she was "much smaller." Lynch grabbed the knife from Geremia and stabbed her. According to a forensic pathologist, Geremia had been stabbed five times in the chest and abdomen, each time receiving a wound that by itself would have been fatal. She had also been wounded twice on her back and side. Lynch watched her bleed to death. The next day, he buried her body in a trench on the farm used for disposing of dead pigs.

Lynch was incarcerated on unrelated charges and confided in another inmate, who told another; the police eventually interviewed Lynch's confidant. Using the information they obtained, the police discovered Geremia's body on January 4, 1993.

B.        Trial in the Massachusetts Superior Court

Lynch was charged with murder in the first degree. Lynch's defense at trial was that he had stabbed Geremia in self-defense or by accident, and that his "sense of reality was altered" at the time of the stabbing because of his heavy drinking. He testified he did not intentionally stab Geremia; the stabbing was inadvertent and happened during a struggle in which Geremia tried to stab him with the knife, kneed him in the groin, and slapped him. Lynch and his trial counsel reenacted the struggle for the jury (Lynch as himself, counsel as Geremia). Lynch testified that when he realized Geremia had been stabbed, he tried to stop her bleeding by pressing a towel onto the stab wound. The defense also presented evidence of Lynch's heavy consumption of alcohol earlier and expert testimony about the effects of alcohol addiction and excessive drinking. The expert opined that when Lynch awoke from his passed-out state, he would have felt numb and could have been in a "blackout" or "hallucinating" when Geremia was stabbed.

Defense counsel's closing argument focused on Lynch's extreme intoxication and lack of sleep -- as counsel put it, "[h]e drank and he drank and he drank" before going home with Geremia,

and then he drank some more. Counsel argued that Geremia had violated Lynch's rights and the sanctity of Lynch's home by stealing money from the dresser, but this was presented not as justification for an attack on Geremia, but rather as the precursor to Lynch's simply asking Geremia to leave. Counsel stressed not rage, but the notion that Lynch "didn't know what [Geremia] was capable of" once Geremia "pull[ed] a knife." Lynch reacted as any reasonable person would: he tried to get the knife out of Geremia's hand, whereupon she "took a swipe at his hand," and a struggle ensued, in which Geremia continued to kick and hit Lynch, until at some point Lynch noticed some blood. Lynch then "panicked," tried to stop the bleeding with a towel, and ultimately concealed Geremia's body on the grounds of the hog farm.

Counsel suggested that the supposed "multiple stab wounds" had actually occurred later on, when Geremia's body was being recovered. Counsel portrayed Lynch as "scared" and concluded that the killing "was self-defense, and it was an accident," that "[a]t the very worst . . . it was recklessness," and that there "certainly wasn't malice."

At the heart of Lynch's habeas argument are the jury instructions distinguishing murder from voluntary manslaughter. At the beginning of the jury charge, the trial judge correctly instructed the jury that "[a]ll of my instructions are equally important. Do not single out some and ignore others." The court

-7-

also stated that "[w]e can't decide that one law is a good law and another is a bad law . . . . You must accept the entire law that I'm going to give you."

When it came to the substantive law governing the charges, the court started with murder: "Murder is the unlawful killing of a human being with malice aforethought. Murder committed with deliberately premeditated malice aforethought or with extreme atrocity or cruelty is murder in the first degree. Murder which does not appear to be murder in the first degree is murder in the second degree."

On malice itself and on voluntary manslaughter, the court said:

> [T]he crime is voluntary manslaughter, not murder, if malice is negated by reasonable sudden provocation or sudden combat or at least by a reasonable doubt whether those circumstances were absent. I will . . . instruct you on voluntary manslaughter in a few minutes.
> The existence of malice has not been proved if you find the death resulted when the defendant was in the state of hot blood upon a reasonable provocation or sudden combat or in the exercise of self-defense, however excessive you find the use of force to have been in the circumstances.

The court told the jury not to draw an inference of malice "unless you are persuaded beyond a reasonable doubt that the defendant's specific intent did not arise in his mind when he was in a state of hot blood upon a reasonable provocation or sudden combat or in the exercise of self-defense."

After explaining first- and second-degree murder, and stating multiple times that to prove murder the Commonwealth had to prove beyond a reasonable doubt malice and other elements, the court explained that if the Commonwealth had not proved murder, the jury "must then consider whether the Commonwealth has proved the lesser included offense of manslaughter." The court defined manslaughter as "the unlawful killing of a person by another without malice aforethought." The court explained that certain mitigating circumstances negate malice, and if they are present, "even though the defendant has committed an unlawful killing the crime is manslaughter and not murder." The court said that one type of manslaughter is voluntary manslaughter, which it defined as

> an unlawful intentional killing resulting from a sudden transport of the passions of fear, anger, fright, nervous excitement or heat of blood, when there is no time to deliberate and when such passion or heat of blood is produced by adequate or reasonable provocation and without malice, or upon sudden combat.

Next, the court gave the instructions about which Lynch complains: "In order to prove the defendant guilty of voluntary manslaughter the Commonwealth must prove three elements beyond a reasonable doubt: first, that the defendant inflicted an injury upon Andrea Geremia from which she died; second, that the defendant injured Andrea Geremia as a result of a sudden combat or in the heat of passion or using excessive force in self-defense; and third, that the homicide was committed unlawfully, without legal

-9-

excuse or justification, and was not an accident." (emphases added) We highlight the portion of the court's language -- what Lynch calls an "inversion" -- that puts the burden on the Commonwealth to prove the mitigating factors that negate malice.

Right after this, the court confusingly stated that the burden was on the Commonwealth to <u>disprove</u> these mitigating factors: "Where there is evidence of provocation the Commonwealth has the burden of proving beyond a reasonable doubt that the defendant did not act in the heat of passion." The court added that "[t]he Commonwealth has the burden of proving beyond a reasonable doubt that the defendant did not act in the heat of passion or on sudden provocation. You may not return a verdict of guilty of murder unless the Commonwealth meets this burden." This was followed by another "inversion," described in the footnote

below.[3]   Indeed, Lynch claims that in all, there were seven inversions.

The jury returned a verdict of guilty of first-degree murder.  The jury found that Lynch had committed first-degree murder both "with deliberately premeditated malice aforethought" and "with extreme atrocity or cruelty."  The court sentenced Lynch to life imprisonment.  His post-trial motions for a new trial and other requests were denied.

C.      The SJC Ruling on Lynch's Direct Appeal and Appeal From Denial of Post-Trial Motions

Lynch appealed his conviction and from the denial of various post-trial motions, including a motion for a new trial. The appeals were consolidated before the SJC.  See Lynch, 789 N.E.2d at 1054.  One of the claims Lynch raised before the SJC was that the trial judge's "instruction regarding voluntary

---

[3] The court told the jury that

> if, after considering all of the evidence, you find that the Commonwealth has proved beyond a reasonable doubt that the circumstances preceding or attending the killing were caused by adequate and reasonable provocation by the deceased or by an act of sudden combat against the defendant . . . and that thereupon the defendant under the influence of such passion and before the cooling of the blood killed the deceased, then you must find the defendant guilty of voluntary manslaughter.

But "[i]f . . . you find the Commonwealth has not met this burden of proof then you must find the defendant not guilty of voluntary manslaughter."

manslaughter impermissibly shifted the burden of proof on provocation, thereby creating a substantial likelihood of a miscarriage of justice."[4]  Id.  The SJC agreed that there had been error,[5] but observed that there had been no objection to it, and so the error was subject only to limited review.  See id. at 1060. Noting the trial judge's other, correct, statements of the law and analogizing to Commonwealth v. Fickling, 746 N.E.2d 745 (Mass. 2001), the SJC held that "the 'center of gravity' of the charge plainly rested on the side of the correct instruction," and that there was thus not "a substantial likelihood of a miscarriage of justice."  Lynch, 789 N.E.2d at 1061.  The SJC also rejected Lynch's other claims, including a separate claim for ineffective assistance of counsel as to matters unrelated to the jury

---

[4] This issue was raised solely on direct appeal, and not in Lynch's motion for a new trial.  Lynch cast his claim on appeal as one of both federal constitutional (due process) law and Massachusetts law, and he asserted that trial counsel's failure to object "amounted to ineffective assistance of counsel."

[5] The SJC referred to the error as an "Acevedo error," Lynch, 789 N.E.2d at 1060, so named after the case of Commonwealth v. Acevedo, 695 N.E.2d 1065 (Mass. 1998).  In Acevedo, the judge told the jury that in order for a voluntary manslaughter conviction to be warranted, the Commonwealth must prove beyond a reasonable doubt that, inter alia, "the defendant injured [the victim] as a result of sudden combat or in the heat of passion or using excessive force in self defense."  Id. at 1067.  The SJC stated that "[t]hat language incorrectly told the jury that malice is negated by provocation only if provocation is proved beyond a reasonable doubt," and it stressed that "[t]he correct rule is that, where the evidence raises the possibility that the defendant may have acted on reasonable provocation, the Commonwealth must prove, and the jury must find, beyond a reasonable doubt that the defendant did not act on reasonable provocation."  Id.

-12-

instructions, and affirmed the trial court in all respects. See
id. at 1054, 1062.

D.          Federal Petition for Writ of Habeas Corpus

Lynch then filed a petition in the U.S. District Court
for a writ of habeas corpus under 28 U.S.C. § 2254,[6] asserting four
claims,[7] of which only the first is of concern.  The first was that
"the state court violated federal due process by allowing the
murder conviction even though several renditions of irreconcilable
instructions regarding factors negating malice effectively relieved
the Commonwealth of the burden of proving malice beyond a
reasonable doubt."  The substance of Lynch's argument is repeated
in substantially the same form on appeal.

The district court denied the habeas petition.  The
court, citing Ortiz v. DuBois, 19 F.3d 708 (1st Cir. 1994),
correctly held that Lynch's failure to raise his objection to the
jury instructions at trial constituted an independent and adequate
state ground that was sufficient to foreclose federal habeas review

---

[6] Before filing his habeas petition, Lynch had filed a
petition for rehearing with the SJC, which was denied, and had
filed a petition for a writ of certiorari with the Supreme Court,
which was also denied, see Lynch, 540 U.S. 1059.

[7] Lynch's second, third, and fourth grounds were claims that
Lynch was deprived of effective assistance of counsel with respect
to various pre-trial and trial matters; these were treated by the
district court as one basic ineffective assistance of counsel
ground.  Lynch's habeas petition did not make a specific
ineffective assistance of counsel argument as to trial counsel's
failure to object to the jury instructions.

-13-

of the alleged error, absent a showing of cause and prejudice. See id. at 714 (citing Wainwright v. Sykes, 433 U.S. 72, 84 (1977)). The court correctly noted that Lynch could only avoid the effect of the procedural default by showing cause for and prejudice from his failure to object. See id. (citing Wainwright, 433 U.S. at 84). The court determined that because Lynch had only offered speculation that the jury relied on the incorrect instructions, he had not met the required prejudice showing that the error put him at an actual and substantial disadvantage and infected his entire trial with error of constitutional dimensions. See id. The court denied ground one of Lynch's petition. It also denied the claims of ineffective assistance of counsel as to other decisions on trial counsel's part.

Lynch sought a COA as to the first ground of his petition, the due process/jury instruction issue. The district court stated that there was room for disagreement on whether Lynch had shown cause for and prejudice from his failure to object to the instruction, and it allowed the COA "as to the due process ground."

E.        Lynch's Due Process Claim

The SJC determined that at least a portion of the jury charge did contain error, and respondents do not challenge that determination here. The ultimate dispute on the merits is about the consequences of the error. The SJC held that "the 'center of gravity' of the charge plainly rested on the side of the correct

-14-

instruction," and that there was thus not "a substantial likelihood of a miscarriage of justice." Lynch, 789 N.E.2d at 1061. Lynch, however, says that the instructions "created the significant possibility that [he] was erroneously convicted of murder in the first degree instead of manslaughter." Commonwealth v. Boucher, 532 N.E.2d 37, 40 (Mass. 1989).

Lynch's federal constitutional argument is that the jury instructions violated due process by effectively relieving the Commonwealth of the burden of proving malice, an essential element of the crime of murder. Lynch invokes the rule of In re Winship, 397 U.S. 358 (1970), that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." Id. at 364; see also Mullaney v. Wilbur, 421 U.S. 684, 704 (1975) ("[T]he Due Process Clause requires the prosecution to prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation when the issue is properly presented in a homicide case.").

## II.

A.       Standard of Review

We review the district court's denial of habeas relief de novo. See Ellsworth v. Warden, 333 F.3d 1, 3 (1st Cir. 2003).

The standards for review of the federal claim itself are set forth in the AEDPA: if the claim was "adjudicated on the merits

in State court proceedings," the AEDPA mandates that the application for habeas corpus is not to be granted with respect to that claim unless the state court's adjudication of the claim satisfies either of two conditions: (1) it "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,"[8] or (2) it "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d).

There are several important caveats for purposes of this case.   The first is that if the state court finds a claim was procedurally defaulted at trial, we cannot reach the merits of that claim unless the petitioner meets the federal habeas standards to excuse the procedural waiver.   The second is that the petitioner must have properly presented the claim to the state court under the exhaustion requirement of § 2254(b)(1).   And the third is that if the habeas petition "presents a federal claim that was raised before the state court but was left unresolved," this court reviews the claim de novo.   Horton v. Allen, 370 F.3d 75, 80 (1st Cir.

---

[8] Further explication of the "contrary to" prong may be found in Ouber v. Guarino, 293 F.3d 19 (1st Cir. 2002).  See id. at 26; see also Williams v. Taylor, 529 U.S. 362, 412-13 (2000). Explication of the "unreasonable application" test may be found in McCambridge, 303 F.3d 24.  See id. at 36; see also Williams, 529 U.S. at 412-13.

2004). After all, "AEDPA imposes a requirement of deference to state court decisions, but we can hardly defer to the state court on an issue that the state court did not address." Fortini v. Murphy, 257 F.3d 39, 47 (1st Cir. 2001).

B.        Procedural Default

The respondents argue that this court should not review the merits of Lynch's due process claim, because he procedurally defaulted his challenge to the jury instructions and has not shown circumstances to excuse the default.

In contrast to the statutory exhaustion requirement, the procedural default doctrine stems from equitable principles informed by history, statutes, and judicial decisions. See McCleskey v. Zant, 499 U.S. 467, 489-90 (1991) (discussing similarities of doctrines of procedural default and "abuse of the writ"); Wainwright, 433 U.S. at 81. The procedural default doctrine consists largely of judge-made rules. See Dretke v. Haley, 541 U.S. 386, 394 (2004).

Respondents' procedural default argument invokes the rule that

> [i]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

-17-

<u>Coleman</u> v. <u>Thompson</u>, 501 U.S. 722, 750 (1991); <u>see also</u> <u>id.</u> at 729-30 (discussing "independent and adequate state ground doctrine," which "applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement" (citing <u>Wainwright</u>, 433 U.S. at 81, 87)).

"A state court's decision to find a forfeiture, based on the defendant's failure to object at trial, is an independent and adequate ground for decision so long as the state court consistently applies its contemporaneous objection rule and has not waived it in the particular case by basing the decision on some other ground."  <u>Horton</u>, 370 F.3d at 80-81; <u>see</u> <u>also</u> <u>id.</u> at 81 (noting that "[t]he SJC consistently enforces the rule that unpreserved claims are forfeited and enforced the rule in the instant case" (citations omitted)).

The SJC, expressly noting that the instruction "was not objected to at trial," reviewed Lynch's jury instructions claim for "a substantial likelihood of a miscarriage of justice." <u>Lynch</u>, 789 N.E.2d at 1060.  Limited review of this sort "does not work a waiver of the contemporaneous objection requirement." <u>Horton</u>, 370 F.3d at 81.

Because there is an adequate and independent state ground for the SJC's decision, Lynch's claim on the merits of the jury instruction issue can only be considered for habeas purposes if

-18-

Lynch meets one of the established exceptions to the bar on federal habeas consideration of his claim. There can be no serious claim that this petition falls into the "fundamental miscarriage of justice" category, see Coleman, 501 U.S. at 750, (assuming the exception applies in at least certain non-capital cases): Lynch does not argue that he is "actually innocent" of the underlying offense, and since Massachusetts does not have the death penalty, the question of actual innocence of the "aggravating circumstances rendering the inmate eligible for the death penalty," Dretke, 541 U.S. at 388, does not arise.[9] The alternative that remains open to Lynch is that he must establish "cause and prejudice" with respect to the procedural default. See Coleman, 501 U.S. at 750.

Here, the district court denied Lynch's habeas petition on the ground that Lynch failed to object at trial and had failed to show prejudice, so that an independent and adequate state ground barred federal habeas review of the due process claim. We prefer to analyze the case initially on cause grounds.

To establish cause, there must be "some objective factor external to the defense" which "impeded counsel's efforts to comply

---

[9] Massachusetts sometimes uses the phrase "capital case" to refer to murder cases, even where the sentence imposed is not a sentence of death. See, e.g., Mass. Gen. Laws ch. 278, § 33E (for purposes of review under §33E, "a capital case shall mean a case in which the defendant was tried on an indictment for murder in the first degree and was convicted of murder in the first degree"); Commonwealth v. Anderson, 834 N.E.2d 1159, 1172 (Mass. 2005).

-19-

with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). In some instances, state defense counsel's ineffectiveness at trial in failing to preserve a claim for review in state court will suffice to establish such cause. See id. at 487-88. But that ineffectiveness must rise to the level of being a constitutional violation under Strickland v. Washington, 466 U.S. 668 (1984). See Gunter v. Maloney, 291 F.3d 74, 81, 82 n.2 (1st Cir. 2002). A habeas petitioner complaining of ineffective assistance of counsel as a basis to show cause for procedural default must show (1) "that counsel's representation fell below an objective standard of reasonableness," Strickland, 466 U.S. at 688, and (2) that "any deficiencies in counsel's performance [were] prejudicial to the defense," id. at 692, in that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694.

The Supreme Court has recently elaborated on the Strickland prejudice prong. In a case where counsel failed to present mitigating evidence at sentencing, the Court first employed an articulation close to the Strickland language, finding that "had the jury been confronted with this considerable mitigating evidence, there is a reasonable probability that it would have returned with a different sentence." Wiggins v. Smith, 539 U.S. 510, 536 (2003). The Court went on to conclude that "[h]ad the

-20-

jury been able to place petitioner's excruciating life history on the mitigating side of the scale, there is a reasonable probability that at least one juror would have struck a different balance," id. at 537, and that "the available mitigating evidence, taken as a whole, might well have influenced the jury's appraisal of [the habeas petitioner's] moral culpability," id. at 538 (internal quotation marks omitted) (quoting Williams v. Taylor, 529 U.S. 362, 398 (2000)).

Importantly, a federal habeas petitioner trying to excuse his procedural default by showing ineffective assistance of counsel as cause must first have presented the ineffective assistance claim to the state court. See Edwards v. Carpenter, 529 U.S. 446, 452-53 (2000); Gunter, 291 F.3d at 81. The Supreme Court has stressed "the inseparability of the exhaustion rule and the procedural-default doctrine." Carpenter, 529 U.S. at 452. And so, a habeas petitioner can default on presenting an ineffective assistance claim even when the claim is offered as a reason to show cause and prejudice for his default on a different constitutional claim. Of course, he can try to show cause and prejudice to excuse the default of the ineffective assistance claim in order to show cause and prejudice to excuse his procedural default of the different constitutional claim he wants to present. Id. at 453. Lynch does not present such an argument: he says he did present to

the SJC an ineffective assistance claim on the failure to object to the jury instructions.

On the question of cause, the respondents make two arguments which put stumbling blocks[10] in the way. The respondents argue first that Lynch procedurally defaulted on his claim of ineffective assistance of counsel <u>as to the jury instructions</u>. Respondents made this procedural default claim for the first time at oral argument, and their precise argument is unclear. They twice asserted that Lynch's ineffective assistance of counsel claim on the jury instructions issue "was never brought up." But they also stated that Lynch did assert ineffective assistance on the jury instructions before the SJC, and that the problem occurred in the trial court, where Lynch failed to include in his motion for a new trial a specific claim of ineffective assistance of counsel as

---

[10] It is customary to address the procedural default issue on habeas first, even if that issue may be more complex than simply turning to the ultimate question, and even when the likely affirmance on the ultimate question is to uphold the state court judgment. See <u>Lambrix</u> v. <u>Singletary</u>, 520 U.S. 518, 525 (1997) (noting that the procedural bar issue ordinarily should be resolved first); <u>see</u> <u>also</u> <u>Dretke</u>, 541 U.S. at 393-94 (holding that "a federal court faced with allegations of actual innocence, whether of the sentence or of the crime charged, must first address all nondefaulted claims for comparable relief and other grounds for cause to excuse the procedural default"). The procedural default rule is logically prior and arguably it is more respectful to the state to treat the default rule first. See <u>Lambrix</u>, 520 U.S. at 523 ("Application of the 'independent and adequate state ground' doctrine to federal habeas review is based upon equitable considerations of federalism and comity."). Still, the conventional order of analysis, which we follow here, because respondents have urged us to, itself can add a layer of complexity and delay.

to the jury instructions.  If it were clear that Lynch did not include in his ineffective assistance claim to the SJC the failure to object to the jury instructions, his case would be over.

Respondents' second argument, and the one advanced in their brief, is that if such an ineffective assistance claim were presented, the SJC effectively disposed of it on the prejudice prong when it held that there was not "a substantial likelihood of a miscarriage of justice."  Lynch, 789 N.E.2d at 1061.  We accept neither argument.

On the first argument, it is clear from the record that Lynch did flatly raise before the SJC an ineffective assistance claim based on counsel's failure to object to the jury instructions, and it is clear that the Commonwealth replied directly to this argument.[11]  The fact that the SJC failed to discuss this ineffective assistance claim does not mean Lynch did not raise it.  To the extent respondents say the default occurred earlier, in Lynch's motion for a new trial, this point was not raised in the Commonwealth's brief to the SJC, and the SJC did not

_____

[11] Lynch's brief to the SJC, in concluding the discussion of the jury instructions, stated: "Because the correct formula was stated in [an SJC decision] in 1989, six years before the trial here, an ordinary fallible lawyer should have objected and corrected the judge.  This failure amounted to ineffective assistance of counsel, and created a substantial likelihood of miscarriage of justice."  This was followed by a citation to Lynch's addendum, which contained statements of the law on ineffective assistance.  The Commonwealth's brief to the SJC argued that there was no ineffective assistance of counsel as to the jury instructions, and Lynch's reply brief again argued that there was.

-23-

say the claim of ineffective assistance of counsel as to the jury instructions was foreclosed because of failure to comply with state procedural rules.[12]

The second argument raises the question of whether the SJC, in applying the state rule for unobjected-to jury instructions and in concluding that there was no "substantial likelihood of a miscarriage of justice," essentially used the same test as that under Strickland's prejudice prong.

We reject the second argument for two reasons. First, the SJC did not purport to do an ineffective assistance analysis on this point, and second, the two standards (for review of unpreserved error and for prejudice under Strickland) have not been shown by respondents to be the same. We reject respondents' implicit, unelaborated argument that the Strickland prejudice prong is no more than a miscarriage of justice test. The SJC neither overtly nor implicitly adjudicated the jury instructions issue as an ineffective assistance claim.

In Mello v. Dipaulo, 295 F.3d 137 (1st Cir. 2002), we considered on habeas an unobjected-to jury instruction error and evaluated whether there was "a probability[,] sufficient to undermine confidence in the outcome," id. at 142 (quoting Strickland, 466 U.S. at 688), that the instruction error "could

---

[12] At oral argument, respondents framed the issue only as one of procedural default and did not invoke the exhaustion requirement of § 2254(b)(1).

-24-

. . . have affected the verdict the jury returned," id. at 149. This is the Strickland prejudice standard.  See Rompilla v. Beard, 125 S. Ct. 2456, 2469 (2005); Wiggins, 539 U.S. at 538.

In fact, the SJC's standard for ineffective assistance of counsel, articulated in Commonwealth v. Saferian, 315 N.E.2d 878, 883 (Mass. 1974), is the functional equivalent of the Strickland standard.  See Mello, 295 F.3d at 143-44; Scarpa v. DuBois, 38 F.3d 1, 7 (1st Cir. 1994).  The Saferian standard is "whether there has been serious incompetency, inefficiency, or inattention of counsel -- behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer -- and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defence." Saferian, 315 N.E.2d at 883.

The standard the SJC did apply in its analysis of the jury instructions issue was the "substantial likelihood of a miscarriage of justice" test.  But it did not connect its determination that there was no substantial likelihood of a miscarriage of justice to a finding on ineffective assistance as to the jury instructions.

As a pure matter of language, the prejudice prong of Strickland appears to impose a standard more favorable to defendants than a "substantial likelihood of a miscarriage of justice" test.  Under Strickland, Lynch must show only that "there

-25-

is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," Strickland, 466 U.S. at 694, as illustrated in Wiggins. See Wiggins, 539 U.S. at 536-38 (2003) (emphasizing "reasonable probability that at least one juror would have struck a different balance"). It may or may not be that the state courts have put a judicial gloss on their substantial likelihood of a miscarriage of justice standard, but the respondents have not provided argument or citation on this point, and, absent that, we are not prepared to say the state standard is the same as or more favorable than the Strickland prejudice standard.

Because the SJC did not address the ineffective assistance issue as to the failure to object to the jury instructions, we review it de novo. Fortini, 257 F.3d at 47.

As a matter of our independent review, we find no Strickland error in counsel's failure to object to the jury instructions. The premise of the ineffective assistance claim is that the muddled instructions relieved the Commonwealth of its burden of proof beyond a reasonable doubt on the question of malice, insofar as the issue was raised of manslaughter by heat of passion or sudden provocation.

As to the first ineffective assistance prong, whether counsel's conduct in failing to object "fell below an objective standard of reasonableness," Strickland, 466 U.S. at 688, we are

doubtful.  "[T]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Wiggins, 539 U.S. at 521 (quoting Strickland, 466 U.S. at 688) (internal quotation marks omitted).  Lynch has to show that no competent lawyer would have reasonably permitted these instructions to be given without objection.  See Dugas v. Coplan, 428 F.3d 317, 328 (1st Cir. 2005) (question is "whether, given the particular facts of this case, [counsel] fell below the constitutional standard of competence").  He has not made such a showing.

Trial counsel had put evidence of hallucination and stuporous misunderstanding in front of the jury, through the testimony of the defendant and his expert, and had suggested that Lynch lacked malice because this was an accident.  There were repeated strong instructions on the government's bearing the burden of proof on showing malice, which were correctly stated.  It is true the jury was also incorrectly instructed that the government had to prove beyond a reasonable doubt that Lynch did act in the heat of passion or on sudden provocation.  This misstates the government's burden of proof.  We cannot say that "any reasonably competent attorney," Wiggins, 539 U.S. at 525, would have deemed the instructions so central to his case and so confusing that they posed a risk to Lynch, absolutely demanding an objection.  The main defense theme was absence of malice due to the defendant's

alcohol-induced haze, which may have led Lynch to use excessive force in self-defense.

Moreover, even if counsel's performance were deficient, we think it extremely unlikely the jury verdict would have been affected by it. It is very doubtful that the jury misunderstood the burden of proof as to each element of the case, including malice. And the defense's main theme rested primarily not on manslaughter by heat of passion or sudden provocation, but on Lynch's incapacity to have had the requisite intent because his alcoholism and mental condition had robbed him of the ability to have such an intent, including in his own defense. As the SJC noted, "the 'center of gravity' of the charge plainly rested on the side of the correct instruction," and the charge, "read as a whole, could not have been understood to relieve the Commonwealth of its burden to prove beyond a reasonable doubt every element of the crime." Lynch, 789 N.E.2d at 1061. The jury almost certainly rejected Lynch's claim of mitigating circumstances not because the government failed to prove the mitigating factors, but rather because the jury believed the government had disproved mitigation beyond a reasonable doubt. Lynch has not met the Strickland prejudice standard.

In theory, Strickland attacks (including its own prejudice prong) go to the separate "cause" as opposed to the "prejudice" standards for overcoming default. See, e.g., Carrier,

477 U.S. at 487-88; Horton, 370 F.3d at 83 (because petitioner failed to establish ineffective assistance of counsel, he had not demonstrated cause for procedural default); Gunter, 291 F.3d at 81-82. However, in this circuit, we have held that Strickler v. Greene, 527 U.S. 263 (1999), requires a finding that if a habeas petitioner can meet the prejudice standard needed to establish ineffective assistance under Strickland, then the prejudice standard under the "cause and prejudice" showing to excuse a procedural default is also met. Prou v. United States, 199 F.3d 37, 49 (1st Cir. 1999). Prou involved the habeas statute for prisoners in federal custody, 28 U.S.C. § 2255, but Strickler itself involved a state prisoner, and the logic of Prou extends to 28 U.S.C. § 2254. We so held in Evicci v. Maloney, 387 F.3d 37 (1st Cir. 2004). See id. at 40; see also Lattimore v. Dubois, 311 F.3d 46, 56 n.7 (1st Cir. 2002). Since Lynch has not met the prejudice standard under Strickland, he has also not met the prejudice standard to excuse procedural default.

As a result, we do not reach the merits of the jury instruction issue, because an adequate and independent state ground stands in the way. It should be clear, though, that if Lynch cannot meet the prejudice requirement under Strickland about the failure to object to the instructional error, he is quite unlikely to show, were we to reach the question on the merits, that the SJC was unreasonable in its decision on the merits.

**III.**

The district court's denial of the petition for a writ of habeas corpus is <u>affirmed</u>.