COMMONWEALTH vs. COLIN G. ERDELY.

Hampden. May 4, 1999. - August 3, 1999.

Present: WILKINS, C.J., LYNCH, GREANEY, MARSHALL, & IRELAND, JJ.

*Evidence,* Hearsay, Opinion. *Constitutional Law,* Assistance of counsel. *Practice, Criminal,* Instructions to jury, Reasonable doubt, Assistance of counsel, New trial. *Intoxication.*

At a murder trial, a hearsay statement of the defendant's girl friend to the effect that she believed him responsible for the murder of the victim was admissible for the limited purpose of explaining why the police did not permit the defendant to talk with her, in order to dispel any claim that the police coerced the defendant's confession, and any prejudicial effect was not significant, in the circumstances, in light of the powerful evidence of the defendant's guilt. [150-152]

At a murder trial, the judge's instruction to the jury on reasonable doubt was adequate. [152]

Evidence at a murder trial did not warrant an instruction on voluntary intoxication. [152-153]

A criminal defendant convicted of murder in the first degree did not demonstrate that his trial counsel's failure to challenge the Commonwealth's forensic evidence created a substantial likelihood of a miscarriage of justice [153-154]; and there was no substantial likelihood of a miscarriage of justice in trial counsel's failure to seek funds for forensic experts or in the judge's denial of the defendant's posttrial motion for funds to retain experts [154].

INDICTMENTS found and returned in the Superior Court Department on December 21, 1994.

The cases were tried before *Daniel A. Ford,* J., and a motion for a new trial was heard by him.

*Greg T. Schubert* for the defendant.

*Jane Davidson Montori,* Assistant District Attorney, for the Commonwealth.

WILKINS, C.J. The defendant was convicted of murder in the first degree of an eighty-six year old woman in her Chicopee home on December 15, 1994. The jury found that the defendant had acted with deliberate premeditation and that he was guilty

of felony-murder. He was also convicted of armed robbery and armed home invasion. We affirm the convictions.

The jury could have found the following. The defendant knew that the victim, a great-aunt of the defendant's then girl friend, kept cash in her pocketbook beside her day bed upon which she slept. The defendant, carrying a knife, broke into the victim's home through a bathroom window, seeking money to pay his rent. When he bumped into chimes, he woke up the victim. She saw the defendant and started screaming. The defendant put his hand over her mouth and fatally stabbed her in the chest. He took the victim's wallet and other items.

The defendant's convictions are here on direct review. He also has appealed from the denial of his motion for a new trial and additionally challenges the denial of his request for funds for experts to assist him in presenting his motion for a new trial. All the defendant's appellate arguments, except his concern over the denial of funds for experts, involve alleged errors apparent on the record of his direct appeal. None of those alleged errors was the subject of an objection. The trial judge could appropriately have declined to deal with those issues, leaving them for review by this court in the defendant's direct appeal. The judge chose, however, to consider each alleged error, as was his right, and he did so fully and correctly, denying the new trial motion. Because the judge considered those issues on the merits, this court must treat them as if fully preserved for appellate review. *Commonwealth* v. *Hallet*, 427 Mass. 552, 554 (1998).[1] We conclude that there was no reversible error in the defendant's trial, that he was not entitled to funds for an expert, and that there is no basis for granting him relief pursuant to G. L. c. 278, § 33E.

1. The defendant challenges the admission of an incriminating statement attributed to Myia Ortell, a grandniece of the victim and the defendant's former girl friend. Richard Kopeski, a Chicopee police officer, participated with State Trooper Christopher Wilcox in an interview of the defendant at the Chicopee police station shortly after the killing. The defendant first made a largely exculpatory statement. Later, confronted with claims that his statement was inconsistent with facts known to

---

[1]The defendant argues these issues to us in terms of the ineffectiveness of his trial counsel in not objecting to the alleged trial errors. We discuss the asserted trial errors directly because they are before us fully preserved for appellate review.

the police, the defendant made a second and highly incriminating statement.

The defendant claimed at trial that the second statement to the police was the result of coercion. According to the defendant, the police threatened to implicate Ortell if he did not confess. Defense counsel brought out on cross-examination of Officer Kopeski that, during the interview that led to the defendant's second statement, the defendant had asked to talk with Ortell. Lieutenant Higgins, who was in charge of the investigation, denied the request and told the defendant that Ortell did not want to talk to him.

On redirect examination of Kopeski, in order to dispel any impression that the police coerced the defendant's inculpatory statement, the prosecutor returned to the defendant's request to see Myia Ortell. The following occurred: THE PROSECUTOR: "And at some point he also wanted to see . . . his girlfriend?" THE WITNESS: "Yes, he did." THE PROSECUTOR: "Now, when he wanted to do that, what did you do?" THE WITNESS: "When he requested to see [his girl friend], Trooper Wilcox left the room, told me he was going to ask Lieutenant Higgins. I remained in the room. Trooper Wilcox came back in the room with Lieutenant Higgins." THE PROSECUTOR: "And what did Lieutenant Higgins say at that point?" THE WITNESS: "Lieutenant Higgins told [the defendant] he could not see [his girl friend]. That she did not want to see him. *She believed he was responsible*" (emphasis supplied). Defense counsel did not move to strike the statement that Ortell believed that the defendant was responsible.

Ortell's statement concerning the defendant's responsibility for the crime was inadmissible opinion evidence and was also hearsay inadmissible to prove its truth. See *Commonwealth v. Lennon*, 399 Mass. 443, 445 (1987). The fact that Ortell did not want to see the defendant sufficiently explained why the police did not permit the defendant to talk with her and tended to dispel any claim of police coercion. That statement was admissible for that limited purpose. See *Commonwealth v. Miller*, 361 Mass. 644, 659 (1972). A limiting instruction, if requested, would have been appropriate. See *Commonwealth v. Roberts*, 378 Mass. 116, 126 (1979).

The statement that Ortell had said that she did not want to see the defendant because she believed the defendant was responsible was prejudicial and not necessary to any aspect of the Commonwealth's case. Once that statement was out, defense

counsel may well have concluded that a motion to strike the statement would only focus the jury's attention on it.

It was apparent from Ortell's testimony that her opinion was not the product of personal knowledge. The prosecutor did not thereafter rely on Ortell's statement to Lieutenant Higgins. Cf. *Commonwealth* v. *Martin*, 417 Mass. 187, 189-191 (1994) (testimony of defendant's girl friend that she suspected defendant committed crime constituted prejudicial error particularly because prosecutor stressed the testimony during his closing argument). These circumstances and the powerful evidence of the defendant's guilt assure us that the admission of this brief statement and counsel's failure to seek remedial action concerning it did not significantly prejudice the defendant or affect the jury's verdicts.

2. The judge's instruction on reasonable doubt was adequate. It would have been better if he had not referred to the civil preponderance of the evidence standard. See *Commonwealth* v. *Payne*, 426 Mass. 692, 699 n.7 (1998). Considering the charge as a whole, as we must, the judge's instructions fully conveyed the principles of reasonable doubt. See *Commonwealth* v. *Watkins*, 425 Mass. 830, 838-839 (1997); *Commonwealth* v. *Crawford*, 417 Mass. 358, 367-368 (1994).

3. The defendant was not entitled to a voluntary intoxication instruction. The evidence did not warrant one. "Voluntary intoxication instructions are not required where the evidence does not suggest a condition of 'debilitating intoxication' that could support a reasonable doubt as to whether a defendant was capable of forming the requisite criminal intent." *Commonwealth* v. *James*, 424 Mass. 770, 789 (1997), and cases cited. The defendant testified that, on the night of the killing, he had drunk two and one-half glasses of beer before he went to a local bar, that he was not under the influence of alcohol, and that he was "absolutely clear headed." According to the defendant, he took only two sips of beer at the bar and then took a taxicab home. On cross-examination, the defendant stated again that he was sober on the night in question. William Chilson testified that the defendant did not appear intoxicated at 12:15 or 12:20 A.M. when he dropped the defendant off near the victim's residence.

The defendant contended that he did not commit the crimes. A claim of intoxication would have been inconsistent with the claim that he did not commit the crimes. Moreover, the prospect

of persuading the jury that the defendant was intoxicated when he killed the victim was nonexistent in the face of the evidence, particularly the defendant's testimony that he was sober on the night of the crimes.

4. The defendant argues that his trial counsel was ineffective in a constitutional sense in failing "to challenge the Commonwealth's weak and ambiguous forensic evidence with opposing expert testimony." The defendant contends that his trial counsel's failure to challenge such weak evidence precluded the possibility of discovering potentially exculpatory evidence. We view the defendant's claim of ineffective assistance of counsel to determine whether error during the course of trial, if any, created a substantial likelihood of miscarriage of justice. See *Commonwealth* v. *Mitchell*, 428 Mass. 852, 854 (1999); *Commonwealth* v. *Ruddock*, 428 Mass. 288, 292 n.3 (1998).

The Commonwealth's physical evidence and related expert testimony was far from compelling. Human blood was found on the defendant's knife, a pair of pants, and his sweatshirt. Neither the defendant nor the victim could be excluded as the source of the blood on the knife; tests of the pants and sweatshirt were inconclusive. Human blood was also discovered on gloves in the pockets of a black leather jacket found in the defendant's bedroom closet. The defendant, but not the victim, was excluded as the source of the blood on the gloves. Several other items of the defendant's clothing tested positive for blood, but the blood could not be positively identified as human blood. A partial heel impression in the bathtub in the victim's home was consistent with the defendant's boot, a boot which was commonly sold in the area. No blood was found on the boots. The defendant's fingerprint was on the lower portion of a leg of the victim's walker. The Commonwealth's expert could not determine when the fingerprint was left there.

The defense did not ignore this evidence. The defendant stated that Ortell and he had visited the victim from time to time. The defendant then explained the presence of his fingerprint on the victim's walker, testifying that he had repaired the walker's wheel during one of his visits. The defendant also testified that he had been in a fight in September, 1994, that at the time he was wearing some of the clothes that were tested for blood in this case, and that both he and the person with whom he fought bled.

Nothing in the record on direct appeal demonstrates that

defense experts would have uncovered new evidence or that their involvement likely would have made a difference in the result. The defendant simply has not made the case on that record that counsel's failure to challenge the Commonwealth's forensic evidence created a substantial likelihood of a miscarriage of justice.

5. The defendant moved, in conjunction with his new trial motion, for funds to retain experts, purporting to rely on G. L. c. 261, § 27C (4). The judge denied the defendant's motions for funds. Although an appeal from the denial of a § 27C (4) motion in the Superior Court normally is to a single justice of the Appeals Court, G. L. c. 261, § 27D, such an appeal taken in "conjunction with the defendant's direct appeal in a capital case would appropriately be to this court as well." *Commonwealth* v. *Carter*, 429 Mass. 266, 270 (1999). We shall treat the denial of the defendant's motions for funds as properly before us for consideration. Here, the defendant clearly requested funds in connection with his motion for new trial. The plain language of G. L. c. 261, § 27C, and our decision in *Commonwealth* v. *Carter*, *supra*, precludes the allowance of funds in such circumstances.

Neither the failure of trial counsel to seek funds for experts nor the posttrial denial of funds created a substantial likelihood of a miscarriage of justice. See G. L. c. 278, § 33E. Because we conclude that there was no such likelihood, we need not consider what course we could take in identifying funds to pay a defendant's experts if there were such a substantial likelihood.

The forensic evidence was not a substantial part of the Commonwealth's case. There is no reason apparent on the record to conclude that the Commonwealth's experts were wrong in their conclusions. The defendant's fingerprint on the victim's walker was not particularly incriminating because the defendant had appropriately been in the victim's apartment on several occasions. The defendant's statement to the police that he had committed the crimes, the admission of which is not challenged on appeal, makes insignificant the speculative possibility that an expert for the defense would have found something meaningful to challenge the Commonwealth's relatively benign forensic evidence.

*Judgments affirmed.*

*Order denying motion for a new trial affirmed.*