Viengsaymay **CHALEUMPHONG,**
Petitioner,

v.

Edward **FICO,** Superintendent,
Respondent.

Civil Action No. 02–10997–RGS.

United States District Court,
D. Massachusetts.

April 24, 2006.

Robert L. Sheketoff, Boston, MA, for Petitioner.

Linda A. Wagner, Attorney General's Office, Boston, MA, for Respondent.

### ORDER ON MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

STEARNS, District Judge.

Magistrate Judge Dein's thorough analysis is persuasive. I agree with her that:

(1) that a proper federal constitutional ground supporting the vouching claim was invoked before the Supreme Judicial Court (SJC) by petitioner's citation to *United States v. Dailey*, 759 F.2d 192 (1st Cir. 1985); (2) that the SJC correctly determined that the trial judge committed no error in admitting the former prosecutor's testimony with appropriate limiting instructions, *see Commonwealth v. Ciampa*, 406 Mass. 257, 547 N.E.2d 314 (1989); (3) that there is no federal basis for petitioner's challenge of the refusal of the trial judge to instruct on the impact that voluntary intoxication might have had on petitioner's state of mind; (4) that petitioner waived any challenge to the trial judge's decision to seat a sixteenth juror by failing to raise a seasonable objection; and (5) that there is no merit to the claim that the Commonwealth was obligated to prove that the defendant knew that his (and the acts of his coventurers) met the legal definition of "extreme atrocity or cruelty." Consequently, the Magistrate Judge's Recommendation is *ADOPTED* and the petition is *DISMISSED* with prejudice.

SO ORDERED.

## REPORT AND RECOMMENDATION ON RESPONDENT'S MOTION TO DISMISS

DEIN, United States Magistrate Judge.

### I. *INTRODUCTION*

Viengsaymay Chaleumphong ("Chaleumphong") has brought this petition for a writ of habeas corpus challenging his state law convictions for first degree murder of Joshua Molina on a theory of extreme atrocity and cruelty, and assault and battery on Juan Santana by means of a dangerous weapon (the "Petition") (Docket #1). Chaleumphong contends that the trial court violated his Fourteenth Amendment due process rights by (1) erroneously permitting a former prosecutor to vouch for cooperating witnesses; (2) failing to instruct the jury on voluntary intoxication; (3) depriving him of the benefit of state law regarding peremptory challenges; and (4) erroneously instructing the jury concerning the intent needed to convict for a joint venture involving a crime of extreme atrocity or cruelty. For the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that the Petition for Writ of Habeas Corpus be DENIED.

### II. *STATEMENT OF FACTS*

#### *The Underlying Crime* [1]

Chaleumphong's convictions arise from an incident which occurred on the evening of November 20, 1997 in Lowell, Massachusetts. The facts are provided in greater detail in the decision of the Massachusetts Supreme Judicial Court ("SJC"), *Commonwealth v. Chaleumphong*, 434 Mass. 70, 746 N.E.2d 1009 (2001), and will only be summarized herein.[2]

Chaleumphong and nine of his friends, most of whom were members of the Laos Boyz street gang in Lowell, ventured out

1. The underlying facts as found by the state courts are entitled to a presumption of validity under 28 U.S.C. § 2254(e)(1). *See Gunter v. Maloney*, 291 F.3d 74, 76 (1st Cir.2002); *Sanna v. DiPaolo*, 265 F.3d 1, 7 (1st Cir. 2001). *See also Rashad v. Walsh*, 300 F.3d 27, 35 (1st Cir.2002) (without clear and convincing evidence to the contrary, a presumption of correctness applies to the factual findings of both the appellate and trial courts).

2. The appeal of co-defendant Donnie Bouphavongsa was consolidated with the appeal of

to go "hunting," a semi-monthly activity that involved attacks on members of other rival gangs. *Id.* at 71, 746 N.E.2d at 1011–12. At approximately 9:30 p.m., Chaleumphong and his fellow gang members were driving around in two separate vehicles and encountered a group of three male Hispanic youths, namely Joshua Molina ("Molina"), Juan Santana ("Santana") and Johnny Lozada ("Lozada"). *Id.* at 71, 746 N.E.2d at 1012. Chaleumphong was driving one of the vehicles, and he pulled alongside the three men. *Id.* One of the passengers in Chaleumphong's vehicle summoned Molina, who walked over to the vehicle to speak with its occupants. *Id.* After a brief conversation, Molina walked away from Chaleumphong's vehicle and rejoined his two friends while Chaleumphong and his friends departed to meet up with the other members of his group. *Id.*

Chaleumphong and his friends decided to attack Molina and his friends based on a previous· encounter between Molina and Chaleumphong's co-defendant, Donnie Bouphavongsa ("Bouphavongsa"). *Id.* at 72, 746 N.E.2d at 1012. Chaleumphong and his group proceeded to park their cars in an alley a short distance up the street and waited for Molina and his friends to pass. *Id.* Chaleumphong was armed with a claw-hammer, and Bouphavongsa had a ball peen hammer. Chaleumphong and his friends hid along the side of a diner and, as Molina walked by the diner, one of the gang members sprang from his hiding position and knocked him to the ground while Bouphavongsa, wielding the ball peen hammer, struck Molina in the face. *Id.* Bouphavongsa continued to strike Molina, but not in the head. Others beat him as well. Chaleumphong continued the beating of Molina by repeatedly striking

him in the head with a claw-hammer even as Molina lay motionless on the sidewalk curled in the fetal position. *Id.* Molina's friend, Santana, was also beaten senseless during the attack while the third youth, Lozada, fled and was able to avoid the attack. *Id.* Chaleumphong and the other nine members of the group fled the scene before the police arrived. *Id.*

Molina died three days later from nine head wounds, any one of which was life threatening. *Id.* Each of Molina's head wounds were consistent with the blow of a heavy object (i.e., hammer) wielded with significant force. *Id.* Molina suffered severe hemorrhaging and multiple skull fractures which caused his brain to protrude through a hole in his skull. *Id.* Santana, who was beaten senseless in the attack, regained consciousness in a hospital and eventually recovered from his wounds. *Id.*

Additional facts relating to the events at trial will be addressed in connection with Chaleumphong's specific challenges.

### *Procedural History* [3]

A grand jury sitting in Middlesex County returned a three count indictment on December 24, 1997 charging the Petitioner with: (1) murder in the first degree of Joshua Molina on November 20, 1997; (2) armed assault with the intent to murder Juan Santana on November 20, 1997; and (3) assault and battery by means of a dangerous weapon of Juan Santana on November 20, 1997. On January 13, 1998, the Petitioner pleaded not guilty to all three counts. (SA Ex. 1).

A jury trial commenced on November 17, 1998 before Judge McHugh. (SA Ex. 1 at 7–8). On December 3, 1998, after the close of the evidence and deliberations, the jury returned guilty verdicts on the

Chaleumphong. The convictions of both defendants were affirmed.

[3.] The Respondent has filed a Supplemental Answer ("SA") (Docket No. 9) containing the record of the case below.

charges of murder in the first degree by reason of extreme atrocity and cruelty of Joshua Molina and assault and battery with a dangerous weapon of Juan Santana. (*Id.* at 10). The jury also returned a not guilty verdict on the charge of armed assault with intent to murder Juan Santana. (*Id.*). On the charge of murder in the first degree, the Petitioner was sentenced to a mandatory life sentence at MCI Cedar Junction. (*Id.* at 8). On the charge of assault and battery with a dangerous weapon, the Petitioner was sentenced to a term of nine to ten years to be served concurrently with the mandatory life term. (*Id.*).

The Petitioner filed a timely appeal with the Massachusetts Supreme Judicial Court on December 9, 1998.(*Id.*). On appeal, the Petitioner claimed that the trial judge erred by: "(1) announcing during the third day of empanelment that he might seat fewer than sixteen jurors; (2) admitting vouching evidence, and permitting the prosecutor to vouch for witnesses during argument; (3) refusing to instruct on involuntary intoxication; (4) lowering the Commonwealth's burden in an instruction that permitted the jury to infer malice from consciousness of guilt; and (5) lowering the Commonwealth's burden by instructing the jury that the Commonwealth was not required to prove that, for purposes of joint venture, the defendant was aware that the killing was committed with extreme atrocity or cruelty, or that he desired the killing to be carried out in that manner." *Chaleumphong*, 434 Mass. at 71, 746 N.E.2d at 1011.

The SJC affirmed Chaleumphong's lower court convictions on April 30, 2001, holding that: (1) the trial court's jury empanelment procedure was not in error and did not prejudice the defendant; (2) there was no improper vouching for the credibility of the Commonwealth's cooperating witnesses; (3) there was no error in denying an instruction on involuntary intoxication absent evidence of "debilitating intoxication;" (4) the trial court correctly instructed the jury on malice aforethought in the context of extreme atrocity and cruelty; and (5) the joint venture instructions were appropriate and the defendant's knowledge of the nature of his acts was not an element of murder by extreme atrocity or cruelty. *Id.* at 73–80, 746 N.E.2d at 1012–17.

On May 30, 2002, Petitioner filed the instant petition pursuant to 28 U.S.C. § 2254 for a writ of habeas corpus. (Docket No. 1). On December 12, 2002, Petitioner filed an "Initial Memorandum in Support of His Petition for Writ of Habeas Corpus" (Docket No. 10) ("Pet.Mem."). On May 9, 2003, Respondent filed a "Memorandum of Law in Opposition to Petition for Writ of Habeas Corpus" (Docket No. 15) ("Opp.") arguing that the petition should be denied on grounds that the Petitioner's claims are not cognizable for habeas review because: (1) Petitioner has failed to exhaust state court remedies (ground one); (2) Petitioner challenges the state court's interpretation and application of state law (all grounds); (3) Petitioner is procedurally defaulted by reason of his failure to comport with Massachusetts' contemporaneous-objection rule (ground three); and (4) Petitioner's claims would create a new rule of constitutional law (grounds one and four). Respondent further asserts that the Petitioner cannot demonstrate that the state court's adjudication of his claims on the merits resulted in a decision that was contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court.

## III. ANALYSIS

### A. Standard of Review

The standard of review to be applied to Chaleumphong's habeas corpus pe-

tition is set forth in 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under this standard, a federal habeas court may not grant a writ of habeas corpus unless the underlying state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). As the United States Supreme Court has explained:

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.... The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.

*Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002). An "unreasonable application is different from an incorrect one." *Id.* In order to reach the level of "unreasonable," "some increment of incorrectness beyond error is required." *McCambridge v. Hall*, 303 F.3d 24, 36 (1st Cir.2002) (en banc) (internal citation and quotation omitted). This "increment need not necessarily be great, but it must be great enough to make the decision unreasonable in the independent and objective judgment of the federal court." *Id.* Thus, a "habeas petitioner must do more than merely identify an incorrect result." *Jackson v. Coalter*, 337 F.3d 74, 81 (1st Cir.2003). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established

federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411, 120 S.Ct. 1495, 1522, 146 L.Ed.2d 389 (2000). *See also Smiley v. Maloney*, 422 F.3d 17, 20 (1st Cir.2005); *Horton v. Allen*, 370 F.3d 75, 79–80 (1st Cir.2004).

There are several caveats to this standard of review which are relevant to this case:

The first is that if the state court finds a claim was procedurally defaulted at trial, we cannot reach the merits of that claim unless the petitioner meets the federal habeas standards to excuse the procedural waiver. The second is that the petitioner must have properly presented the claim to the state court under the exhaustion requirement of § 2254(b)(1). And the third is that if the habeas petition "presents a federal claim that was raised before the state court but was left unresolved," this court reviews the claim de novo. *Horton v. Allen*, 370 F.3d 75, 80 (1st Cir.2004). After all, "AEDPA imposes a requirement of deference to state court decisions, but we can hardly defer to the state court on an issue that the state court did not address." *Fortini v. Murphy*, 257 F.3d 39, 47 (1st Cir. 2001).

*Lynch v. Ficco*, 438 F.3d 35, 44 (1st Cir. 2006). Applying these standards to the instant case compels the conclusion that the habeas petition be denied.

### B. *Ground One—Vouching for Cooperating Witnesses*

#### *Relevant Facts—Testimony of Cooperating Witnesses*

Two participants in the attack, Somphone Xaysanasine and Steven Kounlabouth, testified at trial against the Petitioner. *Chaleumphong*, 434 Mass. at 74, 746 N.E.2d at 1013. Xaysanasine had a

plea agreement which reduced his murder charge to assault and battery by means of a dangerous weapon—a shod foot—with a sentencing recommendation of house arrest provided that he testified truthfully. *Id.* at 72, 746 N.E.2d at 1012. Kounlabouth's plea agreement reduced the charges against him to two counts of assault and battery by means of a dangerous weapon with a recommendation of a suspended sentence if he testified truthfully. *Id.* at 72–73, 746 N.E.2d at 1012. During the trial, the former assistant district attorney, James Tamagini, who had been assigned to the investigation, was called as a witness. Chaleumphong contends that as a result of his testimony,[4] as well as the trial court's related failure to give a limiting instruction, the prosecutor's closing argument and the judge's final charge, the prosecution improperly vouched for the credibility of the cooperating witnesses in violation of the Petitioner's Fourteenth Amendment due process rights. In addition to denying the merits of this claim, the Respondent contends that Chaleumphong has failed to exhaust his state court remedies in that he did not present the federal constitutional issue to the state court.

### Arguments Made to the SJC

In his appeal to the SJC, the Petitioner defined the issue presented as "the trial court violated the defendant's state and federal constitutional rights to a fair trial by a series of rulings that permitted the prosecution to vouch for the credibility of its cooperating witnesses." (SA Ex. 2 at 14). In his brief, he cited *United States v. Dailey*, 759 F.2d 192 (1st Cir.1985), for the proposition that "[t]he federal courts have recognized that the risk of perjury is created by the plea agreement itself when an accomplice is promised leniency in exchange for cooperation[.]" *Id.* He then argued that the trial court had violated the "guidelines for the handling of plea agreements contingent on truthful cooperation" which the SJC had established in response to these risks in *Commonwealth v. Ciampa*, 406 Mass. 257, 261–66, 547 N.E.2d 314, 317–20 (1989). (SA Ex. 2 at 15–19). As a result of the errors at trial, Chaleumphong argued, "[t]he defendant was denied his state and federal constitutional rights to a fair trial." (*Id.* at 19).

In rejecting these arguments, the SJC did not address any constitutional considerations. Rather, the court held:

> The assistant district attorney's testimony, given over the objections of both defendants, was closely monitored by the judge to ensure there would be no vouching. His testimony was limited to an accounting of what he said to the cooperating witnesses, and the actions he took as to each during the course of the investigation. He merely outlined the history of the investigation to rebut insinuations of defense counsel that the investigation was result oriented. He did not express his personal belief in the credibility of any witness, or suggest that he had special information at his disposal from which he could verify the truthfulness of their testimony. The judge properly denied motions to strike the direct examination of the assistant district attorney, or alternatively, for a mistrial. The testimony was an appropriate response to the defense strategy, and it did not constitute vouching. *Commonwealth v. Ciampa, supra.* There was no error.

*Chaleumphong*, 434 Mass. at 76–77, 746 N.E.2d at 1015. The SJC also rejected

---

4. On appeal to the SJC, Chaleumphong also argued that Detective Joseph Murray also improperly vouched for the credibility of these witnesses. *Chaleumphong*, 434 Mass. at 74–76, 746 N.E.2d at 1013–14. This claim was not renewed in the Petition.

the argument that the witness' statement on cross-examination that "[i]n a perfect world, they all would have gotten charged with murder" constituted vouching, and ruled that no limiting instruction should have been given following the assistant district attorney's testimony both because there had been no vouching testimony and because the judge properly "recognized that the timing of the requested instruction, if given, could be perceived by the jury as his enlistment onto the defense team" given the posture of the case at that juncture. *Id.* at 77, 746 N.E.2d at 1015.

The SJC further concluded that the jury instructions properly tracked the requirements of *Ciampa*, 406 Mass. at 266, 547 N.E.2d at 320–21.[5] Thus, the judge had given the following instruction:

> Now, a couple of other things on this subject of credibility before I turn to another matter. The first of this is this. You heard testimony in this case from two—I should say several alleged accomplices, who were testifying under an agreement with the prosecution that in exchange for their truthful testimony, the prosecution would reduce the charges that it had initially made against them. You may wish to examine the credibility of those witnesses with care. You may consider the agreements the prosecution made with them and any hopes the witness may have had as to future advantages from the prosecution, along with all of the other factors I have already mentioned.
>
> Moreover, although the agreements say that they are conditioned on truthful testimony, the prosecutors or police have no particular methods or tools that enable the prosecution to determine

whether the witness's testimony, in fact, is true. As a result [of][sic] truthfulness of the testimony given to you by these witnesses, like the testimony of every other witness, is entirely for you to decide. Tr. 10:178–79.

*See* Pet. Mem. at 13. Finally, the SJC concluded that the prosecutor's closing argument to the effect that it was "ludicrous to think that the police were duped by persons so obviously unintelligent as the cooperating witnesses" was not improper as "[t]he prosecutor did not express his personal belief in the credibility of any witness or indicate that he had special knowledge to determine credibility." *Chaleumphong*, 434 Mass. at 78, 746 N.E.2d at 1016. For the reasons detailed below, the Petitioner has not asserted any basis to reverse the SJC decision.

**1. *Exhaustion of State Court Remedies***

The Respondent contends that the Petitioner failed to exhaust this claim because he failed to present a federal constitutional claim to the SJC. *See* Opp. at 13–14. This court disagrees.

 It is well established that, barring exceptional circumstances, "a habeas petitioner in state custody may not advance his or her constitutional claims in a federal forum unless and until the substance of those claims has been fairly presented to the state's highest court." *Barresi v. Maloney*, 296 F.3d 48, 51 (1st Cir. 2002). This requirement exists in order to "protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings." *Rose v. Lundy*, 455 U.S. 509, 518, 102 S.Ct. 1198, 1203, 71 L.Ed.2d 379 (1982). Stated

---

**5.** In *Ciampa*, the SJC held that "[w]e do not prescribe particular words that a judge should use. We do expect, however, that a judge will focus the jury's attention on the particular care they must give in evaluating testimony given pursuant to a plea agreement that is contingent on the witness's telling the truth." 406 Mass. 266, 547 N.E.2d at 321.

differently, the exhaustion doctrine affords state courts the "first opportunity to review all claims of constitutional error." *Id.* at 518–19, 102 S.Ct. at 1203. Moreover, the petitioner has the burden of proving that the exhaustion requirement has been satisfied. *Barresi v. Maloney,* 296 F.3d at 51.

■ In order to "fairly present" a claim to the highest state court, the petitioner must alert the state court "to the federal nature of the claim." *Baldwin v. Reese,* 541 U.S. 27, 29, 124 S.Ct. 1347, 1349, 158 L.Ed.2d 64 (2004) (citations omitted). This requirement ensures that the federal habeas court will determine "whether a conviction violated the Constitution, laws, or treaties of the United States[,]" instead of reexamining state court decisions based only on state law. *Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991). As the United States Supreme Court has held:

> A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim "federal."

*Baldwin,* 541 U.S. at 32, 124 S.Ct. at 1351. Furthermore, where a claim arising under state law is "indistinguishable from one arising under federal law," the federal issue may be deemed to have been "fairly presented" to the state court if the claim was originally couched in terms of state-law. *Nadworny v. Fair,* 872 F.2d 1093, 1099–1100 (1st Cir.1989). Such circumstances, however, do not relieve the petitioner of the "burden of demonstrating the clonal relationship of the federal and state claims which would have likely alerted the state tribunal to the federal nuances." *Id.*

at 1100. Finally, an issue must be presented to the highest state court, "including a state supreme court with powers of discretionary review," in order to satisfy the requirement that an issue be "fairly presented" to the appropriate state tribunal. *Baldwin,* 541 U.S. at 29, 124 S.Ct. at 1349.

■ In the instant case, the Petitioner has exhausted his state court remedies. All of the claims raised in this habeas petition were adjudicated by the SJC, including the Petitioner's claim of impermissible vouching for witness testimony by the prosecutor. *See Chaleumphong,* 434 Mass. at 71, 746 N.E.2d at 1011. On appeal to the SJC, the Petitioner claimed, inter alia, that the trial court violated his federal constitutional rights to a fair trial through a number of rulings that allowed the prosecution to vouch for the credibility of its cooperating witnesses, and cited *Dailey,* a federal case, for the proposition that the federal courts have recognized the inherent risk of perjury created by plea agreements wherein accomplices are afforded leniency in exchange for their truthful testimony. (SA Ex. 2 at 14). Although the Petitioner also relied upon guidelines set forth in the state case, *Ciampa,* itself, incorporates federal law. *See Ciampa,* 406 Mass. at 261–62, 547 N.E.2d at 317–18 (citing federal law for proposition that while testimony pursuant to plea agreements may be admissible, the trial judge must take care to prevent the defendant from being unfairly prejudiced as a result). These facts, in addition to the fact that Chaleumphong labeled his claim as a *federal constitutional claim,* are sufficient to meet the "fairly presented" requirement as stated in *Baldwin,* 541 U.S. at 32, 124 S.Ct. at 1351.

The Respondent contends that *Dailey* and *Ciampa* "do not mention federal constitutional rights with regard to the specific trial error disputed by the petitioner."

Opp. at 14. *Dailey* dealt with the entire issue concerning the admissibility of an accomplice's testimony, with the concern being whether the risk of perjury is so great with such testimony that the defendant's "due process rights will be violated" by its admission. *Dailey,* 759 F.2d at 196. Thus, *Dailey* is premised on basic constitutional rights. Similarly, the prohibition against the government vouching for a witness' credibility and the concerns that a witness with whom the government has entered into a plea agreement may be improperly viewed by the jury as being credible by virtue of the agreement alone, are premised on the need to insure a defendant's fundamental right to a fair trial. *See generally Berger v. United States,* 295 U.S. 78, 84, 88, 55 S.Ct. 629, 631, 633, 79 L.Ed. 1314 (1935) (prosecuting attorney must act within the bounds of "propriety and fairness." As a representative of the government, the prosecutor's interest "is not that it shall win a case, but that justice be done."). In *Ciampa,* the SJC ordered a new trial despite the absence of appropriate objections because there was "a substantial likelihood of miscarriage of justice" where it appeared that the prosecution was vouching for a witness with whom a plea agreement had been reached. *Ciampa,* 406 Mass. at 268–69, 547 N.E.2d at 321–22. In light of Chaleumphong's express reference to his federal constitutional rights in his appeal to the SJC, and the fact that the basis of his claim alleging improper vouching is his fundamental due process right to a fair trial, this court concludes that the federal issue was appropriately presented to the state court. This claim should not be dismissed on the basis of an alleged failure to exhaust state remedies.

## 2. Whether the Petition Raises Only a Matter *of State Law*

■ The Respondent next contends that the habeas petition should be dismissed because the question whether a prosecution witness impermissibly vouched for a cooperating witness raises "purely a state law question without any federal constitutional corollary." Opp. at 14. This court disagrees.

■ It is well established that "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers,* 497 U.S. 764, 780, 110 S.Ct. 3092, 3102, 111 L.Ed.2d 606 (1990). Thus, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting federal habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle,* 502 U.S. at 67–68, 112 S.Ct. at 480. *See also Adelson v. DiPaola,* 131 F.3d 259, 262 n. 3 (1st Cir.1997), and cases cited (federal habeas review not available to challenge alleged errors of state, not federal, law); *Hamm v. Latessa,* 72 F.3d 947, 954 (1st Cir.1995) ("The rule, then, is that a federal habeas court will not disturb the state court's construction or application of state law unless it can be shown that such construction or application offends the Constitution or some (applicable) federal statute."). In the instant case, however, Chaleumphong is not raising only a state law challenge when he argues that there was impermissible vouching for the credibility of witnesses as a result of a series of rulings made by the trial judge. Rather, he is asserting that as a result of these rulings, his federal due process rights were violated. Moreover, the SJC in *Chaleumphong* did not apply or interpret a "state law." Rather, the court reviewed the facts presented in the Petitioner's case to determine whether there was improper vouching. The court cited *Ciampa,* and other cases where appropri-

ate, to support its conclusion that there was no error by the trial judge. *Ciampa,* in turn, made suggestions as to how to insure that no improper vouching would take place. The basic question remained whether the defendant received a fair trial. This claim states a basis for federal habeas relief. For these reasons, it is appropriate to address the merits of the Petitioner's claim.[6]

### 3. The State Court Ruling is Not Contrary to or an Unreasonable Application of Clearly *Established Federal Law*

■ Having overcome the procedural hurdles to review, this court nevertheless concludes that Chaleumphong's habeas challenge to the SJC's ruling on whether there was impermissible vouching for the credibility of the witnesses should be denied.

■ The concern when admitting testimony about a plea agreement which is dependent on a promise of truthful cooperation with the government is "the possibility that the jury will believe that the witness is telling the truth, thinking that, because of the agreement's truthfulness requirement, the Commonwealth knows or can discover whether the witness is telling the truth." *Ciampa,* 406 Mass. at 260, 547 N.E.2d at 317 (citing *United States v. Wallace,* 848 F.2d 1464, 1474 (9th Cir.1988)). Similarly, it is of utmost importance that the government not be viewed as vouching for the credibility of its witnesses because "improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly

carry none." *Berger,* 295 U.S. at 88, 55 S.Ct. at 633.

In the instant case, the SJC clearly recognized the importance of not having the assistant district attorney vouch for the credibility of the cooperating witness. It carefully analyzed the trial testimony and arguments, as well as the trial judge's rulings. *Chaleumphong,* 434 Mass. at 76–78, 746 N.E.2d at 1014–16. The SJC was concerned with whether the trial was fair—the standard which would be appropriate to a due process analysis. In sum, Chaleumphong has failed to establish that the SJC decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

### C. *Ground Two—Failure to Charge on Voluntary Intoxication*

■ Chaleumphong contends that the trial judge's failure, over his objections, to give a voluntary intoxication instruction violated his federal constitutional rights to due process of law. *See* Pet. Mem. at 14. Since the decision of the SJC that no such instruction was warranted under the facts of the case was based on state law and was not contrary to or based on an unreasonable application of clearly established Federal law, Chaleumphong's Petition based on this ground should be denied.

■ Due process does not require that the jury consider voluntary intoxication when a defendant's statement of mind is at issue. *Montana v. Egelhoff,* 518 U.S. 37, 56, 116 S.Ct. 2013, 2024, 135 L.Ed.2d 361 (1996). Rather, "the states are free to prevent jurors from considering evidence of voluntary intoxication[.]" *Goodwin v.*

---

**6.** Even if *Ciampa* is viewed as creating a state law, habeas review would be appropriate since the key issue is whether the trial was fundamentally fair. As the court recognized

in *Sanna v. DiPaolo,* 265 F.3d 1, 11–12 (1st Cir.2001), "a state court's error in applying a state rule sometimes can have constitutional implications."

*Johnson,* 132 F.3d 162, 191 (5th Cir.1998). As the *Egelhoff* court explained:

> The doctrines of *actus reus, mens rea,* insanity, mistake, justification, and duress have historically provided the tools for a constantly shifting adjustment of the tension between the evolving aims of the criminal law and changing religious, moral, philosophical, and medical views of the nature of man. This process of adjustment has always been thought to be the province of the States.

*Egelhoff,* 518 U.S. at 56, 116 S.Ct. at 2023–24 (quoting *Powell v. Texas,* 392 U.S. 514, 535–36, 88 S.Ct. 2145, 2156, 20 L.Ed.2d 1254 (1968) (plurality opinion)). Thus, to the extent that Chaleumphong is contending that due process requires that the jury always be charged on the issue of intoxication, he is incorrect. Similarly, he has failed to establish that the SJC decision was contrary to or based on an unreasonable application of Federal law.

Massachusetts state law does provide that intoxication may be relevant to criminal responsibility. Consequently, if the criteria for an intoxication charge had been met, and the trial judge had failed to give the instruction, Chaleumphong may have stated a claim of a constitutional violation in that "the faulty jury instruction violated due process because it impermissibly shifted the burden of proof by relaxing the Commonwealth's obligation to prove beyond a reasonable doubt that the petitioner possessed the requisite mental capacity for murder." *Sanna v. DiPaolo,* 265 F.3d 1, 12 (1st Cir.2001). However, the record does not support such a conclusion.

The SJC concluded that under Massachusetts law, "[a]n instruction on voluntary intoxication is not required absent evidence of 'debilitating intoxication'" and that while there was "evidence that the defendants may have consumed beer and hard liquor prior to the killing, there was

no evidence of debilitating intoxication." *Chaleumphong,* 434 Mass. at 78, 746 N.E.2d at 1016 (quoting *Commonwealth v. Erdely,* 430 Mass. 149, 152, 713 N.E.2d 965 (1999), quoting *Commonwealth v. James,* 424 Mass. 770, 789, 678 N.E.2d 1170 (1997)). This court is "duty bound to follow this authoritative exposition of state law[.]" *Hamm v. Latessa,* 72 F.3d at 955. Furthermore, the Petitioner has not met his burden of rebutting, by clear and convincing evidence, the presumption that the state court factual findings are correct. *See Rice v. Collins,* —— U.S. ——, 126 S.Ct. 969, 974, 163 L.Ed.2d 824 (2006). The Petitioner has failed to establish that the SJC decision affirming the failure to charge on voluntary intoxication violated his federal constitutional rights.

**D. *Ground Three—Peremptory Challenges***

Chaleumphong contends that the trial court's decision during impanelment to change the number of jurors to be seated unfairly prejudiced his use of peremptory challenges and violated his federal due process rights. *See* Pet. Mem. at 15–17. The Respondent contends that this claim is procedurally defaulted in that the Petitioner failed to object at trial. In addition, the Respondent contends that the right of peremptory challenges is an issue of state law only, and that, in any event, the SJC's decision on this issue was not contrary to or an unreasonable application of clearly established Federal law. This court concurs with all of the Respondent's arguments and recommends that the habeas petition on these grounds be dismissed.

The relevant facts as found by the SJC are as follows. The trial judge initially stated that he would seat sixteen jurors, with each of the defendants being granted twenty peremptory challenges—four more than provided under Mass. R.Crim. P.

20(c)(1), 378 Mass. 889 (1979). *Chaleumphong*, 434 Mass. at 73, 746 N.E.2d at 1012–13. On the afternoon of the third day of impanelment, after fourteen jurors had been seated, the judge mentioned the possibility of seating fewer than sixteen jurors, to which there was no objection. *Id.* at 73, 746 N.E.2d at 1013. By the end of the day, fifteen jurors were seated, Chaleumphong had exercised fourteen challenges and his co-defendant had exercised thirteen. *Id.* The venire was depleted and the judge announced he was prepared to proceed with fifteen jurors. *Id.* Co-defendant's counsel asked that a sixteenth juror be seated to which Chaleumphong's counsel objected and "claimed that his strategy would have been different if they had tried to seat sixteen jurors, adding that he had expedited his challenges." *Id.* The judge decided to seat a sixteenth juror who was selected the next day without objection. *Id.*[7] Each defendant had six unused peremptory challenges at the end of jury selection. *Id.*

Before the SJC, and this court, "Chaleumphong argue[d] that the judge's decision to change the number of jurors from sixteen to a range of fourteen to sixteen impaired his use of peremptory challenges, denied him the benefits of State law on peremptory challenges, and diminished the value of the available challenges." *Id.* Since there had been no objection when the judge raised the possibility of changing the number of jurors, the SJC reviewed the challenge under a miscarriage of justice standard pursuant to Mass. Gen. Laws ch. 278, § 33E. *Id.*[8]

The SJC concluded that there was no error in the procedure followed by the judge, and that the trial judge had appropriately concluded that no prejudice had been shown. *Id.* Moreover, each defendant had expressed satisfaction with each seated juror, each defendant had remaining peremptory challenges, and neither defendant claimed that any juror was not impartial. *Id.* at 74, 746 N.E.2d at 1013. Thus, the appeal was denied.

### 1. *Procedural Default*

■ The Respondent argues that this court should not reach the merits of Chaleumphong's due process claim because this challenge is procedurally defaulted and Chaleumphong has not established a basis to excuse the default. This court agrees.

■ "[T]he procedural default doctrine stems from equitable principles in-

---

7. Petitioner contends that "the trial judge decided to pick a sixteenth juror the next day so as to blunt the petitioner's objection and motion for mistrial." Pet. Mem. at 16. However, from the record, it appears that the trial judge was responding to co-defendant's objection, and that the Petitioner did not want to seat the sixteenth juror. Thus, the SJC concluded that Petitioner's counsel had asserted "that his strategy would have been different if they had tried to seat sixteen jurors[.]" *Chaleumphong*, 434 Mass. at 73, 746 N.E.2d at 1013. Nevertheless, this court's conclusion is the same regardless of which scenario is correct.

8. Petitioner contends that the SJC "was plainly wrong when it claimed that the petitioner did not save his rights on this issue in the trial court." Pet. Mem. at 16. However, the basis of Chaleumphong's objection is to "the trial court's decision to change plans in midcourse" and thereby create uncertainty in the number of peremptory challenges available. *Id.* at 15–16. The only time any uncertainty could have been created was when, on the afternoon of the third day, the trial judge mentioned the possibility of seating fewer than sixteen jurors. No objection was made at that time. By the time Chaleumphong objected to seating the sixteenth juror, Chaleumphong had made the challenges which he now claims were negatively impacted by the trial judge's actions.

formed by history, statutes, and judicial decisions." *Ficco,* 438 F.3d at 44. Under this doctrine, a federal court may not reach the merits of a habeas petition where the state court proceeded on an independent state ground, such as waiver. "A finding by a state court that a defendant procedurally defaulted a claim bars federal habeas corpus relief on that claim unless the defendant as a petitioner shows either cause for the default and prejudice from the claimed violation of federal law, or that a fundamental miscarriage of justice will result if the claim is not considered." *Gunter v. Maloney,* 291 F.3d 74, 78 (1st Cir.2002) (citing *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)). The doctrine of procedural default arises out of "the longstanding rule that federal courts do not review state court decisions which rest on 'independent and adequate state ground[s].' Such independent and adequate state grounds exist where 'the state court declined to hear [the federal claims] because the prisoner failed to meet a state procedural requirement.' In such a case, '[c]onsiderations of comity and federalism bar the federal court's review.'" *Simpson v. Matesanz,* 175 F.3d 200, 205–06 (1st Cir.1999) (internal citations and punctuation omitted), cert. *denied,* 528 U.S. 1082, 120 S.Ct. 803, 145 L.Ed.2d 677 (2000). "A procedurally defaulted claim may, however, be resurrected if the last state court granting review addresses a federal claim on its merits, thereby waiving the default." *Manisy v. Maloney,* 283 F.Supp.2d 307, 311 (D.Mass.2003).

In Massachusetts, the rule that "a claim not raised is waived" is regularly enforced and "firmly established." *Gunter,* 291 F.3d at 79, and cases cited. It is equally well-established that the state appellate court's decision to review a case under a "miscarriage of justice" standard following a failure to object does not waive the need for a contemporaneous objection, and does not "create independent rights in habeas petitioners." *Id.* at 79–80, and cases cited. *Accord Burks v. Dubois,* 55 F.3d 712, 716 n. 2 (1st Cir.1995); *Horton v. Allen,* 370 F.3d at 81.

In the instant case, it is clear that the SJC found that there was no objection at trial, and decided Chaleumphong's challenge relating to peremptory challenges under a miscarriage of justice standard. *Chaleumphong,* 434 Mass. at 73, 746 N.E.2d at 1013. Therefore, there is an adequate and independent state ground for the SJC's decision, and the merits of Chaleumphong's challenge can only be reached if he meets one of the established exceptions to the procedural defaulted rule. *See Ficco,* 438 F.3d at 45. In the event of a procedural default, federal habeas review nevertheless is available if "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750, 111 S.Ct. at 2565. Chaleumphong does not meet these requirements.

### Cause

"In order to establish cause for the default, petitioner must demonstrate 'that some objective factor external to the defense impeded [defense] counsel's efforts to comply with the State's procedural rule.'" *Magee v. Harshbarger,* 16 F.3d 469, 471–72 (1st Cir.1994) (quoting *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)). Here, there was no external factor which precluded counsel from objecting at trial. Moreover, "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute

cause for a procedural default." *Murray*, 477 U.S. at 486–87, 106 S.Ct. at 2644. "So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland v. Washington*," 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the defendant "bear[s] the risk of attorney error that results in a procedural default." *Murray*, 477 U.S. at 488, 106 S.Ct. at 2645.

### Ineffective Assistance of Counsel

■ While ineffective assistance of counsel may constitute "cause" for failing to object at trial, "a federal habeas petitioner trying to excuse his procedural default by showing ineffective assistance of counsel as cause must first have presented the ineffective assistance claim to the state court." *Ficco*, 438 F.3d at 46, and cases cited. Here, Chaleumphong did not raise any ineffective assistance claim before the SJC, thereby precluding any further consideration of such a claim. *See id.* at 47. Thus, the Petitioner has not established "cause" to excuse his procedural default.

### Prejudice

■ Chaleumphong also has failed to establish prejudice arising out of the seating of jurors. "[A]n error generally is considered prejudicial if there is a strong possibility that it affected the outcome of the trial." *Ouber v. Guarino*, 293 F.3d 19, 33 (1st Cir.2002). As detailed above, there has been no showing of prejudice arising out of the potential that the number of jurors might change. Thus, even assuming there was an error committed, it was not prejudicial and does not excuse the procedural default.

### Miscarriage of Justice

■ Finally, "[e]ven absent a showing of cause and prejudice, a federal court exercising its habeas powers should nonetheless overlook a procedural default and hear a barred constitutional claim on the merits if its failure to do so would result in a fundamental miscarriage of justice." *Burks v. Dubois*, 55 F.3d at 717. As the *Burks* court explained:

> This is a narrow exception to the cause-and-prejudice imperative, seldom to be used, and explicitly tied to a showing of actual innocence. . . . To be sure, a habeas petitioner need not prove his innocence beyond all doubt in order to reach the safe haven of the miscarriage exception: it suffices if the petitioner can show a probability that a reasonable jury would not have convicted but for the constitutional violation.

*Id.* at 717–18 (internal citations omitted). In the instant case, Chaleumphong does not claim that he is "actually innocent." In view of the absence of any prejudice arising out of the seating of jurors, all of whom were deemed acceptable, Chaleumphong "cannot show a reasonable probability that a reasonable jury would not have convicted but for the constitutional violation." *Id.* For all these reasons, therefore, the claim relating to peremptory challenges was procedurally defaulted.

### 2. The Objection to the Handling of Peremptory Challenges Does Not State a Claim for Habeas Relief

■ Even assuming that there was no procedural default, Chaleumphong's claim must still be dismissed. It is beyond dispute that the right to exercise peremptory challenges is "one of the most important of the rights secured to the accused." *Swain v. Alabama*, 380 U.S. 202, 219, 85 S.Ct. 824, 835, 13 L.Ed.2d 759 (1965) (internal citation omitted). Nevertheless, "peremptory challenges are not of constitutional dimension. They are a means to achieve the end of an impartial jury."

*Ross v. Oklahoma,* 487 U.S. 81, 88, 108 S.Ct. 2273, 2278, 101 L.Ed.2d 80 (1988) (internal citations omitted). As a result, the denial or impairment of the right to peremptory challenges does not support a due process claim so long as the jury that sits is impartial. *Id.* "Because peremptory challenges are a creature of statute and are not required by the Constitution, it is for the State to determine the number of peremptory challenges allowed and to define their purpose and the manner of their exercise. As such, the 'right' to peremptory challenges is 'denied or impaired' only if the defendant does not receive that which state law provides." *Id.* at 89, 108 S.Ct. at 2279 (internal citations omitted). In fact, "the right to a peremptory challenge may be withheld altogether without impairing the constitutional guarantee of an impartial jury and a fair trial." *Georgia v. McCollum,* 505 U.S. 42, 57, 112 S.Ct. 2348, 2358, 120 L.Ed.2d 33 (1992), and cases cited. *See also United States v. Martinez–Salazar,* 528 U.S. 304, 311, 120 S.Ct. 774, 779, 145 L.Ed.2d 792 (2000) ("unlike the right to an impartial jury guaranteed by the Sixth Amendment, peremptory challenges are not of federal constitutional dimension").

 As these cases make clear, Chaleumphong's federal habeas claim must fail because it raises only a question of state law, and, therefore, is beyond the purview of this court. *See Ballinger v. Byron,* 98 F.Supp.2d 119, 131 (D.Mass.2000) (since the "Supreme Court has stated that dimi-

nution of peremptory challenges is a matter of state, nor federal constitutional law," habeas petition challenging limitation on use of peremptory challenges must fail). In any event, Chaleumphong received the number of peremptory challenges to which he was entitled under state law, had peremptory challenges available at the end of jury selection, and has not asserted that the jury was in any way unfair or impartial.[9] Under such circumstances, the decision of the SJC was not contrary to or an unreasonable application of clearly established federal law. *See Commonwealth v. Beldotti,* 409 Mass. 553, 560–61, 567 N.E.2d 1219, 1224–25 (1991) (trial judge's decision to seat fewer than originally contemplated jurors "violated no principle of State law" and "in the absence of a showing of unfairness, no Federal due process principle was violated"). Therefore, Chaleumphong's habeas petition should be denied.

**E. *Extreme Atrocity or Cruelty Instruction***

 Chaleumphong challenges the jury charge relating to extreme atrocity or cruelty in connection with a joint venture on the grounds that it relieved the Commonwealth of its burden of proving each defendant's individual state of mind. *See* Pet. Mem. at 17–20. As the SJC explained:

> The judge instructed the jury that, if the Commonwealth proved beyond a reason-

---

**9.** These facts distinguish Chaleumphong's situation from the cases on which he relies, in which error was found because a defendant was not able to challenge jurors to which he had an objection. *See, e.g., Knox v. Collins,* 928 F.2d 657, 661 (5th Cir.1991) (judge mislead counsel about instructions to be given, so defendant did not challenge jurors to whom he would have objected); *United States v. Ricks,* 802 F.2d 731, 733–34 (4th Cir.1986) (process employed resulted in defendant wast-

ing challenges on potential jurors who would never be seated so as to deprive him of objections to seated jurors); *United States v. Turner,* 558 F.2d 535, 538 (9th Cir.1977) (method employed by trial judge arbitrarily deprived defendant of peremptory challenges). In the instant case, Chaleumphong had challenges remaining which could have been used if the sixteenth juror was objectionable for whatever reason.

able doubt that either or both defendants "participated in a joint venture with another person to commit an unlawful homicide while sharing that other person's mental state of malice aforethought, and the Commonwealth also proved that the other person committed the unlawful homicide with extreme atrocity or cruelty," then they would be warranted in returning a guilty verdict as to such defendant of murder in the first degree as a joint venturer. The judge added that "[i]t is not necessary for the Commonwealth to prove that [the defendants] had a conscious awareness that the acts were being committed with extreme atrocity or cruelty or that either of them desired the acts to be carried out in that manner."

*Chaleumphong*, 434 Mass. at 79, 746 N.E.2d at 1016–17. The Petitioner challenges this charge because he contends that it fails to require the jury to find that he had the requisite intent. Thus, according to Chaleumphong, the trial court incorrectly "believed and instructed that if *someone* killed Mr. Molina by means of extreme atrocity or cruelty, *everyone* involved was also guilty of murder." Pet. Mem. at 18. According to Chaleumphong, the jury needed to determine whether he acted with extreme atrocity or cruelty, and his individual state of mind, including his mental problems or intoxication, should have considered by the jury. *Id.* at 19. However, the SJC rejected this argument as an incorrect statement of Massachusetts law. *Chaleumphong*, 434 Mass. at 79, 746 N.E.2d at 1017.

Contrary to Chaleumphong's contention, under Massachusetts law it is not an element of murder by extreme atrocity or cruelty that a defendant have knowledge that his acts were extremely atrocious or cruel. *Id.* As the SJC held, "[i]f the Commonwealth has no burden to prove that a defendant who acted alone knew that his

acts were extremely atrocious or cruel, then it has no burden where the defendant acts in a joint venture." *Id.* at 79–80, 746 N.E.2d at 1017. Thus, the instruction as given was consistent with Massachusetts law. Since, as detailed herein, Massachusetts is free to define the elements of the crime charged, Chaleumphong's habeas petition must fail because it raises only a question of state law, and he has not established that the SJC decision was contrary to or an unreasonable application of federal law.

■■■ "[T]he Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" *Jackson v. Virginia*, 443 U.S. 307, 315, 99 S.Ct. 2781, 2787, 61 L.Ed.2d 560 (1979) (quoting *In re Winship*, 397 U.S. 359, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970)). *See also United States v. Gaudin*, 515 U.S. 506, 509–10, 115 S.Ct. 2310, 2313, 132 L.Ed.2d 444 (1995) (under the Fifth and Sixth Amendments, criminal convictions must "rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt"). Nevertheless, the elements of the crime are defined by state law. *See Jackson*, 443 U.S. at 324 n. 16, 99 S.Ct. at 2792 n. 16. As detailed above, the "doctrines of *actus reus, mens rea,* insanity, mistake, justification, and duress" are peculiarly within the province of the states. *Egelhoff*, 518 U.S. at 56, 116 S.Ct. at 2023–24 (internal citations omitted). *See also Martin v. Ohio*, 480 U.S. 228, 235, 107 S.Ct. 1098, 1102–03, 94 L.Ed.2d 267 (1987) (state law defines necessary mental state for crime of aggravated murder). Since "it is not the province of a federal habeas court to reexamine state-court determinations on state-law

questions," Chaleumphong's habeas petition should be denied. *Estelle,* 502 U.S. at 67–68, 112 S.Ct. at 480. *See also Petrillo v. O'Neill,* 428 F.3d 41, 44 (1st Cir.2005) (no habeas relief for errors of state evidentiary law). Moreover, if this court were to consider the issue, Chaleumphong has failed to establish that the SJC decision was contrary to or an unreasonable application of federal law since the jury was appropriately instructed with respect to each element of the crime charged.

## IV. *CONCLUSION*

For the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that Chaleumphong's petition for a write of habeas corpus be DENIED.[10]

April 3, 2006.

---

**10.** The parties are hereby advised that under the provisions of Fed.R.Civ.P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. *See* *Keating v. Sec'y of Health & Human Servs.,* 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 604–605 (1st Cir.1980); *United States v. Vega,* 678 F.2d 376, 378–79 (1st Cir.1982); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *see also Thomas v. Arn,* 474 U.S. 140, 153–54, 106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985). *Accord Phinney v. Wentworth Douglas Hosp.,* 199 F.3d 1, 3–4 (1st Cir.1999); *Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–51 (1st Cir.1994); *Santiago v. Canon U.S.A., Inc.,* 138 F.3d 1, 4 (1st Cir. 1998).